UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
                                     :

**ODETTE OLIVER CYRUS**,
                                     :

                 Plaintiff,         :

                                     :    **MEMORANDUM DECISION AND**
                                         **ORDER**
       – against –         :
                                     :    22-CV-4115 (AMD) (TAM)

**LOCKHEED MARTIN CORPORATION**, *et al.*, :

                                   :

                 Defendant.       :

------------------------------------------------------------- X

**ANN M. DONNELLY**, United States District Judge:

    The *pro se* plaintiff worked as an administrative assistant at Lockheed Martin beginning in June 2017, and then at TRC Companies beginning in November 2019, after TRC acquired the Lockheed division for which the plaintiff worked.  TRC terminated her employment in 2022.

    The plaintiff brings claims against Lockheed, TRC, and many of their current or former employees, alleging race, age, and gender discrimination and retaliation; disability discrimination; discriminatory compensation based on race and gender; and a set of tort claims. Before the Court are the defendants' motions to dismiss the plaintiff's amended complaint.  For the reasons explained below, the defendants' motions to dismiss are granted, and the plaintiff is granted leave to file an amended complaint within 30 days of the date of this order.

**BACKGROUND**

    The plaintiff was an administrative assistant at Lockheed from June 2017 to November 2019.  (ECF No. 156 ¶¶ 12, 293.)  In November 2019, TRC became the plaintiff's employer when it acquired the Lockheed division for which the plaintiff worked.  (*Id.* ¶ 295.)

I.       **Procedural History**

On December 3, 2019, the plaintiff filed a complaint with the New York State Division of Human Rights and the United States Equal Employment Opportunity Commission (the "EEOC") against Lockheed.  (ECF No. 154 at 1.)  The plaintiff alleged that John Franceschina, a Senior Manager at Lockheed[1] and her supervisor, and Brian Loughlin, another employee at Lockheed,[2] subjected her to race and age-based discrimination and retaliation.  (*Id.*)  On September 30, 2020, the EEOC closed the plaintiff's case, and issued a right to sue letter.  (*Id.*)

On December 29, 2020, the plaintiff filed a lawsuit in this Court against Lockheed, Franceschina, and Loughlin, asserting claims of discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 and age discrimination in violation of the Age Discrimination in Employment Act of 1967.  (*Id.* at 2; Complaint for Employment Discrimination, *Cyrus v. Lockheed Martin Corp. et al.* ("*Cyrus I*"), No. 20-CV-6397 (E.D.N.Y. Dec. 29, 2020).)

TRC terminated the plaintiff's employment on May 18, 2022.  (ECF No. 156 ¶ 228.)

On June 10, 2022, the plaintiff filed a complaint with the United States Equal Employment Opportunity Commission ( "EEOC") against TRC.  (*Id.* ¶ 325.)[3]  On July 6, 2022, the EEOC closed the plaintiff's case and issued a right to sue letter.  (*Id.*)

---

[1] (*See* ECF No. 156 ¶ 307.)

[2] According to the complaint, Loughlin was a "Residential Program Manager" at Lockheed.  (*Id.* ¶ 312.)

[3] The plaintiff has not specified what claims she asserted in her EEOC charge against TRC, nor has she provided a copy of the charge or the right to sue letter for the Court's review in this proceeding.  The Court thus cannot determine whether the plaintiff has exhausted her administrative remedies for each claim against TRC.  *See Fowlkes v. Ironworkers Loc. 40*, 790 F.3d 378, 386 (2d Cir. 2015).  This alone warrants dismissal of the plaintiff's federal claims against TRC.  *Henriquez-Ford v. Council of Sch. Sup'rs & Adm'rs*, No. 14-CV-2496, 2015 WL 3867565, at *5 n.3 (S.D.N.Y. June 23, 2015) ("The UFT has not indicated which claims Henriquez-Ford included in her EEOC charge; nor have they submitted a copy of that charge with the Court. . . . Accordingly, to the extent that Henriquez-Ford's EEOC charge

2

The plaintiff brought this lawsuit ("*Cyrus II*") on July 14, 2022 against each of the *Cyrus I* defendants and 21 other employees of Lockheed or TRC, asserting claims of intentional racial discrimination and retaliation under 42 U.S.C. § 1981.  (ECF No. 1.)

On October 3, 2022, the plaintiff filed a third lawsuit ("*Cyrus III*") against TRC and certain TRC employees.  Complaint, *Cyrus v. TRC Companies et al.* (*Cyrus III*), No. 22-CV-05955 (E.D.N.Y. Oct. 3, 2022).

On February 16, 2023, the Court granted Franceschina and Loughlin's motion to dismiss the claims against them,[4] granted the plaintiff leave to amend, and granted the plaintiff's motion to consolidate *Cyrus I*, *II*, and *III*.  (ECF No. 154.)

## II.   The Amended Complaint and Allegations Against the Defendants

The plaintiff filed an amended complaint on April 1, 2023, the operative pleading for purposes of this proceeding.  (ECF No. 156.)

### a.   Factual Allegations[5]

In the amended complaint, the plaintiff explains that she is a "fifty-three year old Black woman" who, "while employed at Lockheed . . . and successor TRC, . . . was subjected to disparate treatment; intentional race discrimination; retaliation, gaslighting; segregation; ostracization; bullying; intimidation; hostile treatment; profanity; excluded from job related and planning meetings; and faced sabotage of her work by co-workers; discriminatory compensation

---

against the UFT did not include some of the federal claims that she asserts in this action, Henriquez-Ford has failed to administratively exhaust those claims, and therefore, . . . they must be dismissed.").

[4] The Court dismissed the Title VII and ADEA claims against the defendants, as neither statute provides for individual liability.  (ECF No. 154.)  The plaintiff brings Title VII and ADEA claims in this lawsuit, but only against Lockheed and TRC.

[5] The 94-page complaint, consisting of a nonlinear account of events and inconsistently numbered paragraphs, is quite difficult to follow.  Nevertheless, the Court interprets the allegations liberally, and resolves ambiguities in the plaintiff's favor.

based on her race and gender; denied diverse job opportunities; received late, inadequate, and less comparable training than similarly situated White employees; treated less favorably as it pertains career opportunities, and professional development." (*Id.* ¶ 3.)

More specifically, the plaintiff alleges that between July 2018 and November 2019, she was subjected to "heightened surveillance" when Lockheed Human Resource officers Courtney May Gillis and Christy Hilton[6] "solicited and received copious amounts of . . . feedback regarding [the plaintiff's] . . . work performance, moods, breaths, sighs, eye rolls, and reactions" from two other Lockheed employees, Sean Mongan[7] and Katherine Montijo[8]. (*Id.* ¶¶ 27–29, 57.)

On December 19, 2018, the plaintiff was too tired to go to work "after spending the night at Brooklyn College working on a final research paper." (*Id.* ¶¶ 107–108.)[9]  She texted Mongan at 6:01 a.m., before her shift began at 8:00 a.m., to let him know that she was taking the day off. (*Id.* ¶¶ 108, 110.)  Mongan "failed to check his text message[s]," "became worried about [the plaintiff]," and notified May Gillis.  (*Id.* ¶¶ 111, 116.)  Someone called 911,[10] and officers went to the plaintiff's home to do a welfare check.  (*Id.* ¶ 117.)  "[W]hile the NYPD was at her residence, she was traumatized, became very emotional and began to cry and subsequently called

---

[6] These two employees, as well as every other named employee discussed in this section, are defendants in this lawsuit.

[7] Mongan "was employed by Lockheed Martin during the period of October 2019 to November 2019 as an Operations Manager."  (*Id.* ¶ 313.)

[8] Montijo "was employed by Lockheed Martin during the period of November 2017 to November 2019 as a Program Manager."  (*Id.* ¶ 314.)

[9] The plaintiff attended Brooklyn College while she was working at Lockheed, but withdrew at some point.  (*Id.* ¶ 2(IX).)  The complaint does not provide dates or further details about this.

[10] The plaintiff does not say who decided to notify the NYPD, but she alleges that May Gillis, Franceschina, Mongan, and Joseph Morton, a Security Investigator at Lockheed, "made [the] 911 call."  (*Id.* ¶¶ 117, 315.)  It is not clear whether she is alleging that one of these people called 911, or that all of them did.

the [] office to complain and to inquire as to why the NYPD was sent to her home." (*Id.* ¶ 118.) She eventually reached her direct supervisor, Franceschina, and "informed [him] that sending the police to his only Black female employee's home to conduct a Welfare Check was Racist," and that "either herself or her family members might have been seriously hurt . . . or killed." (*Id.* ¶ 119.) The plaintiff alleges that Franceschina responded "in a hostile and matter-of-fact manner," and said, "[T]hat's what you get."[11]  (*Id.* ¶ 120.)

The plaintiff alleges that the next day, December 20, 2018, she "applied via Lockheed Martin's website for a Lockheed Martin vacancy advertised internally and externally to fill a Residential Efficiency Affordability Partner (REAP) Program Coordinator Position." (*Id.* ¶ 144.) The plaintiff does not describe the duties or the qualifications for the REAP position. A month later, the plaintiff learned from Linda Eddy, the REAP Program Administrator, that the plaintiff had not been selected to interview for the position. (*Id.* ¶ 146.)[12] The plaintiff emailed Loughlin "to inquire as to why she had not been selected for an interview." (*Id.* ¶¶ 148–49.) He responded that "he had not received her resume and application from [Joseph] Picerno, the Lockheed [] Recruiter," and that her "resume had not been uploaded." (*Id.*)  Loughlin later "stopped by [the plaintiff's] desk and exclaimed in great dramatic fashion, 'stop the presses, I have your resume, [Picerno] . . . must have sourced it over this afternoon." (*Id.* ¶¶ 149–50, 160.) According to the plaintiff, Loughlin's "unbelievably facetious express, dramatic, and belated retrieval of her resume and [his] previous failure to schedule her for an interview initially, were motivated by malice, intentional racial discrimination in the workplace, and retaliation." (*Id.*)[13]

---

[11] The plaintiff does not explain this comment or how she interpreted it.

[12] The plaintiff seems to claim that she and Eddy were in the "break room" when Eddy conveyed this information by "'mouthing' without audible sounds," which the plaintiff alleges "raised a red flag for her . . . regarding the fairness of the hiring process for the REAP vacancy." (*Id.* ¶¶ 146–47.)

[13] Paragraph 160 immediately follows paragraph 150 in the amended complaint.

The plaintiff also alleges that she overheard Loughlin telling other employees that he did not intend to hire the plaintiff for the REAP Coordinator position; the plaintiff does not say when Loughlin made these statements.  (*Id.* ¶ 182.)  She also claims that Loughlin discussed the position with another employee and said that they needed "to be careful and keep things quiet because 'there are spies around.'"  (*Id.*)  The plaintiff provides no dates or additional details about this conversation.

Despite what Eddy told her, the plaintiff eventually interviewed for the REAP Program Coordinator position, although she does not say when.  (*See id.* ¶ 184.)  She also alleges that "during the REAP Program Coordinator first round interview" with Loughlin, Mongan, and Eddy, Loughlin told her that she would need a "LEED Certification."[14]  (*Id.*)  She alleges that "Loughlin's demand for LEED qualification is tantamount to gender discrimination, and disparate treatment because statistically and predominantly LEED certification is possessed by White and Asian males."  (*Id.* ¶ 185.)  She also alleges "that no other applicant, not the White male candidates who participated in the REAP interviews were asked for such credentials."  (*Id.*)

The plaintiff maintains that in February 2019, she "informed Lockheed that she planned to file a complaint with the [EEOC] regarding the hostile environment she faced at work."  (*Id.* ¶ 187.)  In a February 10, 2019 email to Franceschina, the plaintiff stated that she had "reached out to the [EEOC] and plan[ned] to seek their assistance in an effort to mitigate the current abusive environment in which [she] . . . work[ed]."  (ECF No. 178-10 at 2 (Exhibit 10).)[15]

---

[14] The plaintiff does not explain what a LEED Certification is or what the acronym "LEED" means.

[15] Because the plaintiff is *pro se*, the Court considers the plaintiff's exhibits.  (ECF No. 178.)  It is appropriate to consider "materials outside the [*pro se*] complaint to the extent that they are consistent with the allegations in the complaint," including "documents that a *pro se* litigant attaches to her opposition papers."  *Pearson v. Walden Univ.*, 144 F. Supp. 3d 503, 508 (S.D.N.Y. 2015) (cleaned up).

On March 21, 2019, Loughlin and Eddy "met with [the plaintiff] to inform her that she had not been chosen for the REAP Coordinator Position."  (ECF No. 156 ¶ 187; *see also* ECF No. 178-9 at 2 (Exhibit 9).)  She alleges that she told Eddy and Loughlin that she planned to file a complaint with the EEOC for "what she believed was racial discrimination and retaliation in the hiring process and leading up to and during the interview."  (ECF No. 156 ¶ 189.)[16]

Around April 5, 2019, the plaintiff spoke to a Lockheed "EEO Officer[]," Kateri Cummings, and described "what she . . . felt was a discriminatory hiring process and also complained that Mr. Loughlin had obstructed her resume necessitating additional intervention on her part to even obtain an interview."  (*Id.* ¶¶ 57, 192.)

The plaintiff also describes an incident in 2022, when she worked for TRC.  On May 3, 2022, she sent a Teams message, in which she wrote, "I oppose race based pay disparities I support equal pay for equal work."  (*Id.* ¶ 275.)  Regina Robertson[17] "informed [the plaintiff] that had she made the same complaint in-person, in a staff meeting, she would have escorted her [] from the building."  (*Id.*)

**b.    Causes of Action**

The plaintiff asserts multiple claims against Lockheed, TRC, and twenty-seven current or former employees of those companies:

1.    Violations of Title VII of the Civil Rights Act of 1964, against Lockheed and TRC, for race, age and gender discrimination and retaliation.  (*Id.* ¶ 2 (Counts I, II and V(a)[18]).)

---

[16] The plaintiff did not file with the EEOC until early December 2019.  (ECF No. 154 at 1.)

[17] Robertson was a Human Resources Officer for TRC.  (ECF No. 156 ¶ 258.)  The plaintiff numbered several paragraphs as 258 on this page—this citation refers to the second full paragraph on page 69 of ECF No. 156.

[18] The plaintiff mistakenly labeled two causes of action as "V."  The Court refers to them as Count V(a), in which the plaintiff seeks damages for retaliation against Lockheed and TRC, and Count V(b), in which the plaintiff seeks damages for aiding and abetting discrimination in violation of the New York

2.  Violations of New York State Human Rights Law ("NYSHRL"), against all defendants, for race, age and gender discrimination and retaliation, and aiding and abetting discrimination and retaliation.  (*Id.* (Counts I, III, IV, VI, and V(b)).)

3.  Violations of New York City Human Rights Law ("NYCHRL") against all defendants, for race, age and gender discrimination and retaliation, and aiding and abetting discrimination and retaliation.  (*Id.* (Counts I, III, IV, VI, and V(b)).)

4.  Violations of 42. U.S.C. § 1981, against all defendants, for race discrimination. (*Id.* (Count IV).)

5.  Violations of the Age Discrimination in Employment Act of 1967 ("ADEA"), against Lockheed and TRC, for age discrimination.  (*Id.* (Count VIII).)

6.  Violations of the Equal Pay Act, 29 U.S.C. § 206(d) ("EPA") against Lockheed and TRC, for discriminatory compensation.  (*Id.* (Count VII).)

7.  Violations of the Americans with Disabilities Act, 42 U.S.C. § 12101(b)(1) ("ADA") against Franceschina, TRC, and Mongan, for "[d]elayed response and failure to engage in [a] timely, reasonable, and good faith manner in an effort to facilitate requests for ADA accommodation for asthma."  (*Id.* (Count XVII).)

8.  Violations of New York tort law, for the following:

    a.  Breach of implied employment contract against Fraceschina for "inducing [the plaintiff] during the recruiting process for hire in June 2017 to accept employment with a promise that [she] would be allowed a flexible schedule to pursue her academic and professional development," "fail[ing] to honor [this] promise," and causing the plaintiff to "suffer losses associated with withdrawal from Brooklyn College."  (*Id.* (Count IX(a)).)[19]

    b.  "[L]ibelous defamation" against TRC for claiming that "'Performance Issues,' [were] the reasons for its wrongful termination of [the plaintiff];" she asserts that this explanation for her termination "has so damaged her professional reputation that makes it a near impossibility for [her] to obtain future employment."  (*Id.* (Count X).)

    c.  Intentional infliction of emotional distress ("IIED") against all defendants for "intentionally and recklessly engag[ing] in continuous, insidious gaslighting, slow walking of investigation, fail[ing] to conduct a fair and impartial investigation of complaints of race discrimination and retaliation for a period of over three years," and a "persistent threat of law enforcement aided welfare checks."  (*Id.* (Count XI).)

---

State Human Rights Law and the New York City Human Rights Law against all of the defendants. (ECF No. 156 ¶ 2.)

[19] The plaintiff mistakenly labeled two causes of action as "IX."  The Court refers to them as Count IX(a), in which the plaintiff seeks damages for breach of an implied employment contract, and Count IX(b), in which the plaintiff seeks damages for an invasion of privacy.  (ECF No. 156 ¶ 2.)

    d.  Negligent infliction of emotional distress ("NIED") against all defendants, who "should reasonably have foreseen that their failure to conduct a fair and impartial investigation to eradicate retaliation and intentional discrimination had the potential and did cause emotional harm." (*Id.* (Count XII).) The plaintiff also alleges that "one-on-one meetings with Mongan repeatedly induced severe stress, anxiety, and on at least five different occasions prior to and after meeting in-person with Mongan resulted in asthma attacks that necessitated use of her albuterol inhaler." (*Id.* (Count XII).)

    e.  Invasion of privacy against Mongan, Franceschina, May Gillis, and Morton for "malicious unreasonable, and unwarranted disclosure of medical [and] biographical [information] that [the plaintiff] had a reasonable expectation . . . would remain private and secured from unauthorized [] disclosure." (*Id.* (Count IX(b)).)

Doug Brown, Robert Brown, Kevin Calderara, Rahsaan Coefield, Kateri Cummings, Ellen Daly, Fran Dillard, Courtney May Gillis, Christi Hilton, Chuck Kleinknecht, Rachel Liccion, Joseph Morton, Joe Picerno, Karen Sims, and Celeste Urbank (the "Brown defendants") move to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6). (ECF No. 165.) They argue that the plaintiff does not allege facts sufficient to establish general or specific personal jurisdiction over any of the Brown defendants, and that the plaintiff made only "conclusory allegations of race discrimination under Section 1981, NYSHRL, and NYCHRL; retaliation under Section 1981, NYSHRL, and NYCHRL; aiding and abetting discrimination under NYSHRL, and NYCHRL; IIED; NIED; and Tortious Invasion of Privacy." (*Id.* at 13.)

Lockheed, TRC, Sylvia Brown, Evelyn Dean, Linda Eddy, Duane Baldwin, Roger Flanagan, John Franceschina, Laura Lenhart Ramey, Brian Loughlin, Shannen McDonald, Sean Mongan, Katherine Montijo, and Regina Robertson (the "Lockheed defendants")[20] move to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). They say that the plaintiff does

---

[20] It is not clear why the defendants have grouped themselves in this way. For purposes of this order, the Court labels the sets of defendants by the first defendant named in the moving set—the Brown defendants and the Lockheed defendants. The use of "Lockheed defendants" does not suggest an affiliation with Lockheed.

not state plausible claims for relief for "age and/or gender-based discrimination and/or retaliation under any of the federal, state, or local laws," that she "does not make any assertions sufficient to support a claim for pay discrimination under the EPA," that her ADA claim "fails because she does not allege that she suffered from an actual or perceived disability or that she sought any accommodation," and that none of the torts "are legally or factually sufficient."  (ECF No. 166 at 10–12.)

## LEGAL STANDARD

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must contain "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).  While "detailed factual allegations" are not required, "[a] pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'"  *Id.* (quoting *Twombly*, 550 U.S. at 555).

Pleadings are construed in the light most favorable to the plaintiff.  *Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010).  "At the pleadings stage of the proceeding, the court must assume the truth of 'all well-pleaded, nonconclusory factual allegations' in the complaint."  *Quow v. Wallach*, No. 16-CV-3947, 2016 WL 4099107, at *1 (E.D.N.Y. Aug. 2, 2016) (quoting *Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 124 (2d Cir. 2010)).  "Furthermore, *pro se* complaints are held to less stringent standards than pleadings prepared by attorneys, and the court is required to read a plaintiff's *pro se* complaint liberally."  *Id.* (citing *Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007)).  The court must grant leave to amend the complaint if a liberal

reading of the pleadings "gives any indication that a valid claim might be stated." *Shabazz v. Bezio*, 511 Fed. App'x 28, 31 (2d Cir. 2013) (citation omitted).

## DISCUSSION

The motions to dismiss are granted. First, the claims against the defendants Celeste Urbank, Doug Brown, Fran Dillard, and Ellen Daly[21]—four of the Brown defendants—are dismissed. In the complaint, the plaintiff refers to these defendants only in passing, and those references are vague, conclusory, and insufficient to state plausible claims. *See Jenkins v. Eaton*, No. 08-CV-0713, 2009 WL 3873017, at *6 n.11 (E.D.N.Y. Nov. 18, 2009) (dismissing claims as to a specific defendant where "[t]he Complaint only mentions [that defendant] in a conclusory manner and the allegations are not sufficient to state a claim against her"); *Keita v. U.S. Small Bus. Admin.*, No. 07-CV-4958, 2010 WL 395980, at *5 (E.D.N.Y. Feb. 3, 2010) (dismissing claims as to a specific defendant because "[w]ithout some specification of factual detail, the complaint completely fails to state any plausible claim against [that defendant] under the *Iqbal* test"); *Lucien v. Williams*, No. 20-CV-8020, 2023 WL 2648215, at *5 (S.D.N.Y. Mar. 27, 2023) (dismissing claims where, "[b]eyond naming Defendants in the caption of his Complaint, Plaintiff has provided only conclusory allegations as to each of them").

---

[21] The plaintiff refers to Urbank, Brown, and Dillard only briefly; she claims that they were "made aware" of her complaints of discrimination and retaliation but "failed to take" "appropriate steps to eradicate, mitigate or investigate her complaints," and that they allowed alleged discrimination and retaliation "to fester and continue" due to their "failure[s]" to take action. (ECF No. 156 ¶¶ 38, 61, 141.) The plaintiff claims that Urbank and Brown "aided and abetted" the discrimination and retaliation, but gives no additional details. (*Id.* ¶ 82.) The plaintiff also claims that Cummings "involved" Brown in an email chain because Brown is a lawyer, "in an effort to shield her communications from scrutiny and disclosure." (*Id.* ¶ 141). The plaintiff says that Ellen Daly was "made aware" that Franceshina "released to every employee" an "ethics vignette" that was "similar in scenario" to the plaintiff's "complaint of discrimination without changing the character's role sufficiently to mask[] identities. (*Id.* ¶ 302.)

I.      **Title VII and Section 1981**[22]

The Court addresses discrimination and retaliation claims under Title VII and 42 U.S.C. § 1981 together because they are analyzed under the *McDonnell Douglas* burden-shifting framework.  *See Vivenzio v. City of Syracuse*, 611 F.3d 98, 106 (2d Cir. 2010).

a.      **Discrimination**

"Under the *McDonnell Douglas* framework, a 'plaintiff bears the initial burden of establishing a prima facie case of discrimination.'" *Orrego v. Knipfing*, 564 F. Supp. 3d 273, 283 (E.D.N.Y. 2021) (quoting *McGill v. Univ. of Rochester*, 600 F. App'x 789, 790 (2d Cir. 2015)).

To make a prima facie showing of discriminatory failure to promote or hire under the *McDonnell Douglas* framework, a plaintiff must establish that: "(1) she is a member of a protected class; (2) she applied and was qualified for a job for which the employer was seeking applicants; (3) she was rejected for the position; and (4) the position remained open and the employer continued to seek applicants having the plaintiff's qualifications." *Aulicino v. N.Y.C. Dep't of Homeless Servs.*, 580 F.3d 73, 80 (2d Cir. 2009) (quoting *Petrosino v. Bell Atl.*, 385 F.3d 210, 226 (2d Cir. 2004)).  The fourth element "obviously does not apply when the position has been filled." *Martinez v. Davis Polk & Wardwell LLP*, 208 F. Supp. 3d 480, 486 (E.D.N.Y. 2016), *aff'd*, 713 F. App'x 53 (2d Cir. 2017).  "In such cases, the Second Circuit applies the more generic formulation—whether 'the circumstances of the [failure to promote] give rise to an inference of discrimination.'" *Id.* (quoting *Mandell v. Cnty. of Suffolk*, 316 F.3d 368, 377 (2d Cir. 2003)).  "That question, in turn, requires the plaintiff to 'show she was similarly situated in all material respects to the individuals with whom she seeks to compare herself.'" *Id.* (quoting

---

[22] The plaintiff brings claims under Title VII against only Lockheed and TRC and brings § 1981 claims against all defendants.

*Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000)).  "In the context of a promotion, that means comparing the qualifications of the plaintiff with those of the person promoted."  *Id.*

To establish a *prima facie* case of discrimination for other adverse employment actions, the plaintiff "must show that (1) she is a member of a protected class; (2) she was qualified for the position she held; (3) she suffered an adverse employment action; and (4) the adverse action took place under circumstances giving rise to the inference of discrimination."  *Orrego*, 564 F. Supp. 3d at 283 (cleaned up) (citing *McGill*, 600 F. App'x at 790–91).  "Such circumstances may include 'the employer's criticism of the plaintiff's performance in ethnically degrading terms,' 'invidious comments about others in the employee's protected group,' 'the more favorable treatment of employees not in the protected group,' or 'the sequence of events leading to' the adverse action."  *Tieu v. N.Y.C. Econ. Dev. Corp. et al.*, No. 21-CV-5951, 2024 WL 580063, at *7 (S.D.N.Y. Feb. 13, 2024) (quoting *Chambers v. TRM Copy Centers Corp.*, 43 F.3d 29, 37 (2d Cir. 1994)).

"To survive a motion to dismiss, a plaintiff claiming employment discrimination is not required to allege a prima facie case under the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)."  *Gupta v. City of Bridgeport*, No. 14-CV-00112, 2015 WL 1275835, at *4 (D. Conn. Mar. 19, 2015) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002)).  "Still, even if pleading a prima facie case is not required, a plaintiff must plead facts that render [her] claim facially plausible."  *Id.* (cleaned up).  "The elements of a prima facie discrimination claim are nonetheless relevant to the determination of whether a complaint provides a defendant with fair notice and contains sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Id.* (cleaned up).

The plaintiff cites multiple allegedly adverse actions, including the December 2018 NYPD welfare check, the defendant's "surveillance" of her, Lockheed's failure to promote her to the REAP Coordinator position, "Robertson's threat of escort out" after the plaintiff sent a Teams message, an "adverse EEO Investigation that targeted [the plaintiff],"[23] and TRC's decision to terminate her employment.  (ECF No. 175.)  Only two actions qualify as adverse employment actions—Lockheed's failure to promote her to the REAP Coordinator position and TRC's decision to terminate her employment.  *See Edwards v. Metro-N. Commuter R. Co.*, No. 04-CV-1430, 2006 WL 2790402, at *5 (D. Conn. Sept. 27, 2006) ("[P]laintiff's claim of excessive surveillance at work ('hounding') does not constitute an adverse employment action."); *Tepperwien v. Entergy Nuclear Operations, Inc.*, 663 F.3d 556, 571 (2d Cir. 2011) (supervisor's empty verbal threats and comment during employee meeting are nonactionable slights that do not cause harm); *Harge v. City of New York*, No. 21-2293, 2022 WL 17481819, at *1 (2d Cir. Dec. 7, 2022) ("Much of the alleged mistreatment of which Harge complains, including his removal from certain prestigious or desirable details, increased monitoring, deflated annual evaluations, and minor disciplinary violations, did not cause a materially adverse change in the terms and conditions of employment.  The only adverse employment actions apparent in the record are Harge's (1) failure to be promoted, (2) receipt of command disciplines [], and (3) removal from the DWI conditions post." (internal citations and quotation marks

---

[23] In her opposition, the plaintiff alleges that some of the defendants opened an internal EEO investigation into her.  (*See* ECF No. 175 at 38–39.)  This allegation is mentioned in one line of the complaint: "Lockheed Martin targeted her for an adverse EEO investigation."  (ECF No. 156 ¶ 141.)  The plaintiff provides little additional detail in her opposition, except to allege that Calderara and May Gillis were "involve[d]" in this investigation.  (ECF No. 175 at 31.)  In any event, this allegation does not appear to qualify as an adverse employment action.  *Abdulaziz v. Brembly*, No. 17-CV-663, 2018 WL 3764260, at *4 (D. Conn. Aug. 8, 2018) ("Rather, plaintiffs merely allege that they were the subjection of an investigation.  An investigation, in itself, does not constitute an adverse employment action." (citing *Boylan v. Arruda*, 42 F. Supp. 2d 352, 357 (S.D.N.Y. 1999))).

omitted)); *Davis v. N.Y.C. Dep't of Educ.*, 804 F.3d 231, 235 (2d Cir. 2015) (per curiam) (an

adverse employment action must be "more disruptive than a mere inconvenience"); *Potash v.*

*Florida Union Free Sch. Dist.*, 972 F. Supp. 2d 557, 584 (S.D.N.Y. 2013) ("[A] plaintiff must set

forth objective proof that the alleged action was materially adverse." (emphasis omitted)).

                    i.     *Lockheed's Failure to Promote*

Even construing the *pro se* amended complaint liberally, the factual allegations do not

suggest that Lockheed was motivated by race, age, or gender discrimination[24] when it did not

promote the plaintiff to the REAP Coordinator position.  Although the plaintiff alleges in

conclusory fashion that Lockheed's decision not to promote her was discriminatory, she does not

allege that any defendant criticized or made "invidious comments" about any of the protected

groups of which she claims membership. *Tieu*, 2024 WL 580063, at *7.

Nor does the complaint include any facts about the necessary qualifications for the REAP

Coordinator position.  "Without specific factual allegations regarding those qualifications, the

Court is left to speculate whether [the plaintiff] was even qualified for the position[] that she

applied to." *Riddle v. Citigroup*, No. 13-CV-6833, 2014 WL 2767180, at *3 (S.D.N.Y. May 29,

2014) (dismissing plaintiff's Title VII discrimination claim based on failure to hire (internal

citation omitted)); *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 566 (2d Cir.2000) (affirming

dismissal of failure to promote claim where plaintiff failed to allege, *inter alia*, her

---

[24] The plaintiff cannot maintain her claim for gender-based discrimination against Lockheed under Title VII because she did not allege gender discrimination as part of her EEOC Charge.  (ECF No. 18-1.)  Accordingly, she did not exhaust her administrative remedies for this claim, which is a necessary pre-requisite to suit.  *See Fowlkes v. Ironworkers Loc. 40*, 790 F.3d 378, 386 (2d Cir. 2015).  Nor has she alleged any equitable reasons that would excuse her failure to exhaust.  *Id.*  Moreover, she does not address this argument in her brief, so the Court deems it abandoned.  *Lobban v. Cromwell Towers Apartments, Ltd. P'ship*, 345 F. Supp. 3d 334, 343 (S.D.N.Y. 2018) ("A federal court may deem a claim abandoned when a party moves to dismiss it and the opposing party fails to address the argument in any way.").

qualifications); *Mendelsohn v. Univ. Hosp.,* 178 F. Supp. 2d 323, 328 (E.D.N.Y. 2002) (dismissing Title VII claim because the "complaint does not contain even a conclusory allegation that the plaintiff was qualified for the position").[25]  Because she did not include these factual allegations, the plaintiff has not plausibly pleaded the second element of the *prima facie* case— that "she applied and was qualified for a job for which the employer was seeking applicants." *Aulicino*, 580 F.3d at 80.  The plaintiff's discrimination claims with respect to Lockheed's decision not to promote her to the REAP Coordinator position are dismissed.

>           ii.    *TRC's Termination Decision*

The plaintiff has established the first three elements of her termination claim against TRC.  The defendants do not dispute that she belongs to several protected classes, or that she was qualified for her position.  And TRC's decision to terminate the plaintiff was clearly adverse.

However, the plaintiff has not shown that the "adverse action took place under circumstances giving rise to the inference of discrimination."  *Orrego*, 564 F. 3d at 283.  The plaintiff alleges that she suffered "relentless and pervasive racial discrimination" (*see* ECF No. 156 ¶ 34), but alleges no overt acts or remarks that establish or even suggest discrimination.  The plaintiff has not alleged that any defendant referred to her age, gender, or race, criticized "the plaintiff's performance in ethnically degrading terms," or made "invidious comments about others in the employee's protected group."[26]  *Tieu*, 2024 WL 580063, at *7.

---

[25] As noted above, the plaintiff claims that Loughlin told her that she needed a "LEED Certification" for the position, but that other applicants did not need the certification.  The plaintiff does not say what a "LEED Certification" is or give specifics about alleged similarly situated applicants.  *See Kajoshaj v. N.Y.C. Dep't of Educ.*, 543 F. App'x 11, 14 (2d Cir. 2013) (a plaintiff's "'naked allegation' that they were treated differently from [others not in the protected class] cannot demonstrate a plausible entitlement to Title VI relief").

[26] The plaintiff alleges that "Montijo went to great lengths to stereotype her and negatively referred to her repeatedly through the lens of racist Black woman trope."  (ECF No. 156 ¶¶ 36–37.)  She also refers to

While the plaintiff generically alleges "the more favorable treatment of employees not in the protected group"—for example, that TRC treated her "less favorably than White employees as it relates to job benefits, employment opportunities, compensation, [and] performance measures"—these are conclusory allegations, which without more cannot survive a motion to dismiss. *McDowell v. N. Shore-Long Island Jewish Health Sys., Inc.*, 788 F. Supp. 2d 78, 82 (E.D.N.Y. 2011) (dismissing claims where the "plaintiff's conclusion that other similarly-situated employees were treated more favorably than him is a bare conclusion, unsupported by any specific alleged facts"); *Colon v. City of New York*, No. 19-CV-10435, 2021 WL 4943552, at *12 (S.D.N.Y. Jan. 15, 2021) ("[I]t is insufficient for a plaintiff to make naked assertions of disparate treatment without factual allegations indicating those employees treated differently were similarly situated."); *McMillian v. MTA Metro-N. R.R.*, No. 20-CV-01026, 2021 WL 4311318, at *4-5 (S.D.N.Y. Sept. 20, 2021) (dismissing discrimination claim because plaintiff did not allege "any facts which link her termination to unlawful discrimination" and plaintiff cannot "rely on the fallacy that because she belongs to a protected class, it is plausible that anything negative that happened to her at work was because of her membership in that class"). Accordingly, the claims relating to her termination are dismissed.

---

"at least one document where the Defendant Montijo makes written comparisons to Oliver Cyrus size to make her appear larger, stronger, and more intimidating than a much shorter white female colleague" (*id.* ¶¶ 36–37), but does not identify the document or refer to it anywhere else in the complaint. Nor does she specify when or how Montijo stereotyped her. There is no basis to find that the plaintiff suffered an adverse action under circumstances giving rise to the inference of discrimination. *Orrego*, 564 F. Supp. 3d at 283. In any event, "a single stray comment—especially one long removed from the relevant adverse action[]—does not establish a prima facie case of discrimination." *Tieu*, 2024 WL 580063, at *8 (citing *Johnson v. City of New York*, No. 18-CV-9600, 2020 WL 2036708, at *4 (S.D.N.Y. Apr. 28, 2020)).

b.      **Retaliation**

The plaintiff's retaliation claims are analyzed under the same burden-shifting framework, and she bears the initial burden of establishing a *prima facie* case of retaliation.  "[T]o establish a *prima facie* case of retaliation, a plaintiff must demonstrate that (1) she engaged in protected activity; (2) the employer was aware of that activity; (3) the plaintiff suffered a materially adverse action; and (4) there was a causal connection between the protected activity and that adverse action."  *Orrego*, 564 F. Supp. 3d at 284 (internal quotation marks omitted).  A causal connection can be shown either "(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant."  *Gordon v. N.Y.C. Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000).[27]

i.      *Lockheed's Failure to Promote*

The plaintiff has not plausibly alleged that Lockheed was retaliating against her for engaging in protected activity when it did not promote her to the REAP Coordinator position.

"The Second Circuit has not drawn a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship between the exercise of a federal constitutional right and an allegedly retaliatory action."  *Cunningham v. Consol. Edison Inc.*, No. CV-03-3522, 2006 WL 842914, at *19 (E.D.N.Y. Mar. 28, 2006).  However, "a passage of two months between the protected activity and the adverse employment action seems to be the dividing line."  *Id.*  The plaintiff learned on March 21, 2019 that she had not been

_____

[27] As explained above in the discussion of the discrimination claims, the only materially adverse actions the plaintiff has alleged are Lockheed's failure to promote the plaintiff to the REAP Coordinator position and TRC's decision to terminate her employment.

chosen for the REAP Coordinator Position.  (ECF No. 156 ¶ 187; *see also* ECF No. 178-9 at 2
(Exhibit 9).)[28]  Much of the protected activity that the plaintiff alleges occurred over three
months before Lockheed failed to promote her and is too attenuated to establish a causal
relationship between the activity and Lockheed's decision not to promote the plaintiff.  For
example, the plaintiff cites as protected activity her complaints after the police came to her home
on December 19, 2018.  (ECF No. 156 ¶¶ 117–118.)  The plaintiff made those complaints in
December 2018; Lockheed decided not to promote her, at the earliest, on March 14, 2019.

 Moreover, her retaliation claim fails for many of the same reasons that her discrimination
claim fails.  "While it is easy to see how the denial of a promotion could 'dissuade a reasonable
worker from making or supporting a charge of discrimination,' such a conclusion only attaches if
the employee makes a showing that she was qualified for the position."  *Stern v. State Univ. of
N.Y.*, No. 16-CV-5588, 2018 WL 4863588, at *16 (E.D.N.Y. Sept. 30, 2018) (dismissing a
retaliation claim based on a failure to promote where the plaintiff did not show that she was
qualified for the position).  As discussed above, the plaintiff has not alleged any facts to support
a conclusion that she was qualified for the REAP Coordinator position.  In fact, she has not pled
any facts about the necessary qualifications for the position.  Her retaliation claim based on
Lockheed's decision not to promote her is dismissed.

   *ii.*  *TRC's Termination Decision*

 The plaintiff has not alleged facts that would allow the Court to infer that TRC
terminated her in retaliation for protected activity.  The plaintiff seems to allege that she was
terminated on May 18, 2022 because she sent the following message in a May 3, 2022 TRC

---

[28] The plaintiff alleges that Lockheed had already selected someone else for the position at least by March
14, 2019, but that they told her otherwise.  (*See* ECF No. 156 ¶ 187; *see also* ECF No. 178-16 (Exhibit
16).)  Even assuming this earlier March date, the analysis does not change.

Microsoft Teams chat: "I oppose race based pay disparities I support equal pay for equal work."
(ECF No. 156 ¶ 275.)  This message was not sufficient to alert TRC that the plaintiff was
objecting to discrimination against her at TRC.  "While there are no magic words that must be
used when complaining about a supervisor, in order to be protected activity the complainant
must put the employer on notice that the complainant believes that discrimination is occurring."
*Tubo v. Orange Reg'l Med. Ctr.*, No. 13-CV-1495, 2015 WL 5945853, at *11 (S.D.N.Y. Oct. 13,
2015) (citation omitted), *aff'd*, 690 F. App'x 736 (2d Cir. 2017); *see also Int'l Healthcare Exch.,
Inc. v. Glob. Healthcare Exch., LLC*, 470 F. Supp. 2d 345, 357 (S.D.N.Y. 2007) ("[A]mbiguous
complaints that do not make the employer aware of alleged discriminatory misconduct do not
constitute protected activity.")

In her Teams statement, the plaintiff did not say that she believed that there was
discrimination at TRC; she simply announced support for "equal pay for equal work."  This
announcement did not "put the employer on notice that the complainant believes that
discrimination *is occurring*" at that place of employment.  *Tubo*, 2015 WL 5945853, at *11; *see
Bernard v. J.P. Morgan Chase Bank N.A.*, No. 08-CV-4784, 2010 WL 423102, at *16 (S.D.N.Y.
Feb. 5, 2010), *aff'd sub nom.* 408 F. App'x 465 (2d Cir. 2011) ("A vague complaint about unfair
treatment does not necessarily put an employer on notice that an employee believes she is being
discriminated against because of her race or gender.")  Accordingly, the plaintiff's message was
not protected activity, and the retaliation claims relating to her termination are dismissed.

## II.    The Age Discrimination in Employment Act

Like Title VII, the ADEA, 29 U.S.C. § 621 *et seq.*, makes it unlawful for an employer to
"fail or refuse to hire or to discharge any individual or otherwise discriminate against any
individual with respect to [her] compensation, terms, conditions, or privileges of employment,

because of such individual's age." 29 U.S.C. § 623(a).  "To establish a *prima facie* case of discrimination under . . . the ADEA, a plaintiff must show that: (1) she is a member of a protected class; (2) she is qualified for her position; (3) she suffered an adverse employment action; and (4) the circumstances give rise to an inference of discrimination." *Plasencia v. City of New York Dep't of Educ.*, No. 19-CV-11838, 2023 WL 6161928, at *3 (S.D.N.Y. Sept. 21, 2023).  The plaintiff's complaint must "adequately allege that her protected characteristic was a motivating factor" in the defendant's adverse decision.  *Gong v. City Univ. of N.Y.*, 846 F. App'x 6, 8 (2d Cir. 2021).

The plaintiff has not alleged that Lockheed or TRC treated her differently and worse than similarly situated younger employees.  "An employee is similarly situated to co-employees if they were (1) subject to the same performance evaluation and discipline standards and (2) engaged in comparable conduct." *Ruiz v. Cnty. of Rockland*, 609 F.3d 486, 493–94 (2d Cir. 2010) (internal quotations omitted).  The plaintiff alleges that TRC's "classification of Project Coordinator employees has a disparate impact on a mostly female group of employees over forty-years of age" (ECF No. 156 ¶ 236), that TRC provides "unequal opportunities for advancement and treats White male and female employees under forty years more favorably than it does people of color, women, and employees over the age of forty as evidenced by the promotions where TRC provide no career path to similarly situated employees" (*id.* ¶ 265), and that Lockheed and TRC generally "treat[] female employees over forty less favorably than employees under forty and that [] [they] compensate[] female employees at lesser less [sic] than it pays male employees" (*id.* ¶ 258).

These broad statements do not give rise to an inference of discrimination.  The plaintiff does not allege any specifics; she makes no allegations about "performance evaluation,"

"discipline standards," or "comparable conduct." *Ruiz*, 609 F.3d at 493–94.  Therefore, she has

not sufficiently alleged TRC treated her differently than it did similarly situated younger

employees.  Her vague and conclusory allegations are not sufficient to establish a *prima facie*

case of discrimination under the ADEA.  *Plasencia*, 2023 WL 6161928, at *3.  Her ADEA

claims are thus dismissed.

## III.    The Equal Pay Act

A plaintiff making an EPA claim must allege sufficient facts demonstrating that "1) the

employer pays different wages [] [to employees not in the plaintiff's protected class]; 2) the

employees perform equal work on jobs requiring equal skill, effort, and responsibility; and 3) the

jobs are performed under similar working conditions."  *Rose v. Goldman, Sachs & Co., Inc*., 163

F. Supp. 2d 238, 242 (S.D.N.Y. 2001).  The standard is "demanding" and requires a plaintiff to

"establish that the jobs compared entail common duties or content, and do not simply overlap in

titles or classifications."  *E.E.O.C. v. Port Auth. of N.Y. and N.J.*, 768 F.3d 247, 255 (2d Cir.

2014).  "Bald assertions" that the plaintiff and another employee "received disparate wages for

substantially equal jobs under similar working conditions" are "too conclusory" to survive

dismissal.  *Rose*, 163 F.Supp.2d at 244. *See Lacey v. Carroll McEntee & McGinley, Inc*., No. 3-

CV-8832, 1994 WL 592158, at *3 (S.D.N.Y. Oct. 26, 1994) ("Plaintiff [] alleged disparate

wages, equal performance level and similar working conditions but did not supply any facts to

support her allegations."); *Bass v. World Wrestling Fed'n Entm't, Inc*., 129 F. Supp. 2d 491, 503

(E.D.N.Y. 2001) (dismissing claim where plaintiff failed "to elaborate facts supporting her

'information and belief' or even give rise to a reasonable inference to support her claim").

The plaintiff makes only conclusory assertions in her EPA claim.  She asserts multiple

times that "she was subjected to less favorable compensation in comparison to similarly situated

White colleagues," (ECF No. 156 ¶¶ 6, 7, 71); and that Lockheed and TRC "compensate[]
female employees [] less than it pays male employees" (*id.* ¶¶ 74, 257), but she provides little
additional information.  Instead, she includes a list of supposedly similarly situated "White
colleagues," including "Ms. Patricia Ammann, Ms. Gina Marie Foerderer, Ms. Maryann Falco
Pue, Ms. Samantha Fagone, Ms. Cathy Ann, O'Kobrick; Ms. Linda Chodowski; and Mr.
Nathaniel Sietz," who were assertedly paid more than she was for doing the same work.  (*Id.* ¶ 6,
7, 258.)  The plaintiff makes no allegations about these other employees' work histories, duties,
or responsibilities, or any facts that would support the conclusion that any of these employees did
the same work under similar conditions and were paid more than the plaintiff.  *See Wu v. Good
Samaritan Hosp. Med. Ctr.*, 815 F. App'x 575, 581 (2d Cir. 2020) ("[S]he has not alleged
anything about her actual job duties or the actual job duties of her putative comparators"); *Kitani
v. N.Y.C. Transit*, No. 19-CV-1043, 2022 WL 874781, at *10 (S.D.N.Y. Mar. 24, 2022) ("[N]o
factual allegations as to the duties or content of the job of her male coworkers, nor does she
mention that she and her male coworkers performed work under similar working conditions.").
Accordingly, the plaintiff's EPA claim is dismissed.

## IV.    The Americans with Disabilities Act[29]

"To state a claim for failure to reasonably accommodate a disability, a complaint must
allege that '(1) plaintiff is a person with a disability under the meaning of the ADA; (2) an
employer covered by the statute had notice of his disability; (3) with reasonable accommodation,
plaintiff could perform the essential functions of the job at issue; and (4) the employer has
refused to make such accommodations.'"  *Magnotti v. Crossroads Healthcare Mgmt., LLC*, 126

---

[29] The plaintiff does not address the defendant's arguments about the ADA claim in her opposition, so the
Court deems it abandoned.  *Lobban*, 345 F. Supp. 3d at 343.

F. Supp. 3d 301, 313 (E.D.N.Y. 2015) (quoting *Rodal v. Anesthesia Grp. of Onondaga, P.C.*, 369

F.3d 113, 118 (2d Cir. 2004)).

Even read liberally, the plaintiff's complaint does not plausibly plead a claim under the

ADA.  First, the plaintiff has not sufficiently alleged that she suffered from an actual or

perceived disability covered by the ADA.  "'Disability' is defined under the ADA as: '(A) a

physical or mental impairment that substantially limits one or more of the major life activities of

such individual; (B) a record of such an impairment; or (C) being regarded as having such an

impairment.'"  *Burke v. Niagara Mohawk Power Corp.*, 142 F. App'x 527, 528-29 (2d Cir.

2005).  "Although almost any impairment may, of course, in some way affect a major life

activity, the ADA clearly does not consider every impaired person to be disabled."  *Ryan v. Grae*

*& Rybicki, P.C.*, 135 F.3d 867, 870 (2d Cir. 1998). To "substantially limit" means to

"significantly restricted as to the condition, manner, or duration under which an individual can

perform a particular major life activity as compared to the condition, manner or duration under

which the average person in the general population can perform the same major life activity."

*Hendler v. Intelecom USA, Inc.*, 963 F. Supp. 200, 204 (2d Cir. 1997).

The plaintiff claims that she suffers from asthma but does not make any allegations about

the extent to which asthma substantially limits or restricts her ability to work in general.  (ECF

No. 156 ¶¶ 60, 85, 141, 213, 260.)  "[W]hile asthma is certainly an 'impairment,' it cannot

constitute a 'disability' under the ADA unless it substantially limits or significantly restricts the

sufferer's ability to perform a major life activity—in this case, work."  *Droutman v. N.Y. Blood*

*Ctr., Inc.*, No. 03-CV-5384, 2005 WL 1796120, at *6 (E.D.N.Y. July 27, 2005); *see Burke*, 142

F. App'x at 529 (dismissing claim where "Burke has not shown that asthma affects her ability to

work in general").

The plaintiff's claim is deficient in another respect.  "[I]t is the responsibility of the individual with a disability to inform the employer that an accommodation is needed."  *Magnotti*, 126 F. Supp. 3d at 313 (quoting *Graves v. Finch Pruyn & Co., Inc.*, 457 F.3d 181, 184 (2d Cir. 2006)).  The plaintiff does not allege that she informed the defendants that she needed an accommodation; she alleges only that Mongan "fail[ed] . . . to meet with [her] to discuss ADA accommodation for asthma," with no further details.  (ECF No. 156 ¶ 260.)  Absent more specific allegations, the plaintiff cannot maintain a reasonable accommodation claim.  *Magnotti*, 126 F. Supp. 3d at 313 ("There are no allegations anywhere in the Amended Complaint that plaintiff required a reasonable accommodation in order to perform his job, let alone asked defendants for such an accommodation.").

Accordingly, the plaintiff's claims under the ADA are dismissed.

## V.    Personal Jurisdiction

Because the Court finds that the plaintiff's claims are all dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6), it is not necessary to address the Brown defendants' argument that the plaintiff has not pled facts sufficient for personal jurisdiction.  Nevertheless, the Brown defendants' jurisdictional argument also has merit, and it is appropriate to address it in the event that the plaintiff files an amended complaint.

"There are two types of personal jurisdiction: specific and general."  *Am. Integrated Sec. Grp., Inc. v. Terra Sound Tech. LLC*, No. 22-CV-2773, 2023 WL 6308014, at *3 (E.D.N.Y. Sept. 28, 2023).  "General, all-purpose jurisdiction permits a court to hear any and all claims against [a defendant].  Specific jurisdiction, on the other hand, permits adjudicatory authority only over issues that arise out of or relate to the [defendant's] contacts with the forum."  *Id.* (cleaned up).  "The breadth of a federal court's personal jurisdiction is determined by the law of

the state in which the district court is located." *Id.* at \*4 (quoting *O'Keefe v. Blue & Gold Fleet L.P.*, 634 F. Supp. 2d 284, 286 (E.D.N.Y. 2009)).  In New York, general jurisdiction is appropriate when the defendant is "essentially at home in the forum State."  *Sonera Holding B.V. v. Cukurova Holding A.S.*, 750 F.3d 221, 225 (2d Cir. 2014).  New York's long-arm statute permits specific personal jurisdiction over a non-domiciliary who, as relevant here:

> (1) transacts any business within the state;
>
> (2) commits a tortious act within the state; or
>
> (3) commits a tortious act without the state causing injury to person or property within the state if he or she (i) regularly does or solicits business . . . in the state, or (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate commerce.

*Am. Integrated Sec. Grp.*, 2023 WL 6308014, at \*4.

The plaintiff has not pled facts sufficient for general jurisdiction over many of the Brown defendants, as she alleges several of them live and work in states other than New York.  (*See* ECF No. 156 ¶ 299 ("On information and belief, Defendant Kevin Calderara is an EEO Investigator in Lockheed Martin Missile and Fire Control Division in Florida."); *id.* ¶ 301 ("Cummings is employed by Lockheed Martin as a Senior Manager Global Diversity in the Grand Prairie, Texas office."); *id.* ¶ 311 ("On information and belief, Defendant Ms. Rachel Liccion was employed by Lockheed . . . as a Senior Manager Corporate Development and Integration Strategies located in Bethesda, Maryland."); *id.* ¶ 315 ("On information and belief, Defendant Mr. Joe Morton is a Security Investigator in Lockheed Martin Missile and Fire Control Division in Florida.  Upon information and belief Mr. Morton is a resident of Florida."); *id.* ¶ 317("On information and belief, Defendant Ms. Karen Sims is employed by Lockheed Martin as a Manager, Equity and Compliance in the Fort Worth, Texas office.  Upon information and belief Ms. Sims is a resident of Texas.").)

The plaintiff's allegations are insufficient to demonstrate specific jurisdiction over several of the Brown defendants. For example, she alleges only that Liccion, a Maryland resident, "became aware of [the plaintiff's] complaint of race discrimination and retaliation." (ECF No. 156 ¶ 311.) This conclusory allegation does not demonstrate any act sufficient to establish jurisdiction under New York's long-arm statute.

Moreover, the plaintiff's claims do not establish specific jurisdiction; she has not made "allegations establishing jurisdiction with some 'factual specificity,'" and "conclusory assertions alone" "cannot establish jurisdiction." *Cont'l Indus. Grp., Inc. v. Equate Petrochemical Co.*, 586 F. App'x 768, 769 (2d Cir. 2014). In addition, to the extent that the plaintiff's allegations are based on "[t]elephone calls and correspondence sent into New York, by a non-domiciliary defendant who is outside New York," this too is "insufficient to establish personal jurisdiction." *Three Five Compounds, Inc. v. Scram Techs., Inc.*, No. 11-CV-1616, 2011 WL 5838697, at *7 (S.D.N.Y. Nov. 21, 2011).

## VI.    State Law Claims

Finally, the plaintiff brings claims under the NYSHRL, the NYCHRL, and New York state tort law. (ECF No. 156 (Counts I, III, IV, VI, V(b), IX, X, XI, XII, and IX).) "To state a claim under the NYCHRL, [the] plaintiff must allege that the [defendants] discriminated against her 'within the boundaries of New York City.'" *Robles v. Cox and Co., Inc.*, 841 F. Supp. 2d 615, 623 (E.D.N.Y. 2012) (quoting *Shah v. Wilco Sys., Inc.*, 806 N.Y.S.2d 553 (2005)).

Nearly all of the activities that are relevant to a NYCHRL claim are alleged to have occurred in Melville, Long Island, which is located outside of New York City. (*See e.g.*, ECF No. 156 ¶¶ 4, 5, 9, 14, 41, 47, 59, 61, 62, 72, 73, 80, 81, 85, 135, 136, and 141.) The plaintiff does allege that Mongan "violated her HIPAA Rights, [and] intruded upon the solitude and

seclusion of her home" by "caus[ing] the New York Police Department (NYPD) to conduct . . . [a] Welfare Check at [the plaintiff's] New York City residence," but it is not clear that this allegation is part of her NYCHRL claim.  (*Id.* ¶ 55.)  Even assuming it is, "the fact that certain acts leading to discrimination may occur in New York City will not necessarily give rise to a claim under the City HRL."  *Orrego*, 564 F. Supp. 3d at 283 (alterations omitted).  Regardless, "it is undisputed that the . . . the lion's share [of the allegations] (indeed, all but one incident)" "all occurred outside of New York City;" accordingly, the NYCHRL claim can be dismissed. *Id.*; *see also Lambui v. Collins*, No. 14-CV-6457, 2015 WL 5821589, at *6 (E.D.N.Y. Sept. 30, 2015) (dismissing claim where plaintiff "was employed by UBSFS Melville, Long Island branch, and her injuries, including her termination, all arose out of her employment at the Melville location"); *Amaya v. Ballyshear LLC*, 340 F. Supp. 3d 215, 221 (E.D.N.Y. 2018) (dismissing claim because "[a]ll of the discriminatory conduct occurred at Ballysheer [Southampton], far from the five boroughs of New York City").

In any event, the Court would decline to exercise supplemental jurisdiction over these NYCHRL claims.  *See* 28 U.S.C. § 1367(c)(3); *see also Marcus v. AT&T Corp.*, 138 F.3d 46, 57 (2d Cir. 1998) ("[W]here the federal claims are dismissed before trial, the state claims should be dismissed as well.").

The Court also declines to exercise supplemental jurisdiction over the plaintiff's NYSHRL and New York state tort law claims.  Accordingly, those claims are dismissed without prejudice to renewal in state court.

**CONCLUSION**

For these reasons, the defendants' motions to dismiss are granted in their entirety.  In an abundance of caution and in light of the plaintiff's *pro se* status, the Court grants leave to amend the complaint.  The plaintiff has 30 days to file an amended complaint, which must be captioned "Amended Complaint" and bear the same docket number as this order: 22-CV-4115 (AMD) (TAM).

If the plaintiff chooses to file an amended complaint, she must comply with Rule 8 of the Federal Rules of Civil Procedure, which requires that a complaint provide a *short and plain* statement of the relevant facts supporting each claim against each defendant named in the amended complaint.  The plaintiff must limit her amended complaint to 25 pages.  *Sanchez v. Miller*, No. 20-CV-0620, 2020 WL 1140843, at *7–8 (S.D.N.Y. Mar. 6, 2020) (granting leave to amend but imposing a 25-page limit when the dismissed pleading was "72 page[s]," "difficult to follow," and "filled with extraneous information").  The amended complaint must name only those defendants who the plaintiff claims were personally and directly involved in violating her rights.

The amended complaint completely replaces the original complaint.  That is, the amended complaint must stand on its own without reference to the original complaint.  All further proceedings will be stayed for 30 days.  If the plaintiff does not file an amended complaint within the time allowed or show good cause for an extension to file the amended complaint, the Court will direct the Clerk of Court to enter judgment and close this case.  The plaintiff may contact the City Bar Justice Center's Federal Pro Se Legal Assistance Project at (212) 382-4729 for free, confidential, limited-scope legal assistance.

The Clerk of Court is respectfully directed to mail a copy of this Memorandum and Order to the plaintiff and to note the mailing on the docket.

**SO ORDERED.**

s/Ann M. Donnelly

_____

ANN M. DONNELLY
United States District Judge

Dated: Brooklyn, New York
       March 12, 2024