UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------- X
:
**ODETTE OLIVER CYRUS,**
:
　　　　　　　　　　Plaintiff,
:
:                                **MEMORANDUM DECISION AND**
　　　　– against –                **ORDER**
:
:                                22-CV-4115 (AMD) (TAM)
**LOCKHEED MARTIN CORPORATION,** *et al.,*
:
　　　　　　　　　　Defendants.
:
:
---------------------------------------------------------------- X

**ANN M. DONNELLY**, United States District Judge:

Before the Court are the defendants' motions to dismiss the second amended complaint,

in which the plaintiff claims racial discrimination, retaliation, and negligent and intentional

infliction of emotional distress.  As explained below, the Court grants the motions in part and

denies them in part.

## BACKGROUND

The Court assumes familiarity with the background of this case, which is detailed in the

Court's March 12, 2024 memorandum decision and order granting the defendants' motions to

dismiss (ECF No. 185), and will not be repeated except as necessary to explain the basis for the

Court's decision.[1]

---

[1] The Court considers the factual allegations in the complaint, the plaintiff's opposition, documents that the
plaintiff includes with the complaint or incorporates into the complaint by reference, including, where
necessary, the first amended complaint.  *See Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013);
*Williams v. Time Warner Inc.*, 440 F. App'x 7, 9 (2d Cir. 2011).  "[W]hen any allegations contradict the
evidence contained in the documents relied upon by a plaintiff, the documents control."  *Zoulas v. N.Y.C.
Dep't of Educ.*, 400 F. Supp. 3d 25, 48 (S.D.N.Y. 2019) (citation omitted).  The Court considers the
plaintiff's 42-page "exhibit" — which consists of excerpts of emails and other documents — only insofar
as the materials are incorporated into the complaint by reference.  (ECF No. 201.)  "To be incorporated by
reference, the complaint must make a clear, definite and substantial reference to the documents" and must
also "rely heavily upon the document's terms and effect."  *Madu, Edozie & Madu, P.C. v. SocketWorks*

The plaintiff, an African American woman, was an administrative assistant at Lockheed from June 2017 to November 2019, and then at TRC Companies, after TRC acquired the plaintiff's Lockheed division, from November 2019 to May 2022.  (ECF No. 189 ¶¶ 2, 38.)  She alleges that during her employment at both companies she "consistently met all performance standards" and was "never reprimanded, received no warnings for work-related issues, and was never disciplined for disrespectful behavior."  (*Id.* ¶ 16.)

The plaintiff asserts that from May 2018 to November 2019, Lockheed did not "address issues of race discrimination, retaliation, and disparate treatment that she complained of repeatedly," and that this conduct "paved the way for similar discriminatory and retaliatory conduct to persist . . . at TRC" up until her termination in May 2022.  (*Id.* ¶ 37.)

The plaintiff alleges that on December 19, 2018, Lockheed, John Franceschina,[2] Courtney May Gillis,[3] Katherine Montijo,[4] and Sean Mongan[5] "invented a reason . . . to send the NYPD to her home to conduct a welfare check at her home."  (*Id.* ¶ 29.)[6]  The plaintiff told Franceschina that "it was racist to send the police to his only Black female employee's home."  (*Id.*)  He responded, "'That's what you ge[t]' and hung up the phone."  (*Id.*)  When the plaintiff returned to work the next day, Franceschina "never explained . . . his response."  (*Id.* ¶ 30.)

---

*Ltd. Nigeria*, 265 F.R.D. 106, 123 (S.D.N.Y. 2010) (cleaned up).  "A court still may not consider [a document] on a motion to dismiss if there is a dispute 'regarding the authenticity or accuracy of the document' or 'the relevance of the document' to the dispute."  *Id.* at 123 (quoting *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006)).

[2] Franceschina was a senior manager at Lockheed and TRC.  (ECF No. 189 ¶ 5.)

[3] Gillis was in human resources at Lockheed and TRC.  (*Id.* ¶ 11.)

[4] Montijo was a manager and "second in command" to Franceschina at Lockheed and TRC.  (*Id.* ¶ 6.)

[5] Monga was operations manager at Lockheed and associate director at TRC during all relevant times.  (*Id.* ¶ 8.)

[6] In the same paragraph, the plaintiff alleges that Gillis and a Lockheed "security agent" made the decision to send the police to her home.  (*Id.*)

Lockheed, Mongan, and Franceschina told the plaintiff "that the police were sent to her home because [the defendants] were worried and cared about her." (*Id.*) From that point on, "supervisors instructed [the plaintiff's] coworkers to copy managers regarding even their most innocuous communication[s] with her" and Lockheed and TRC "failed to conduct a prompt and thorough good faith investigation" or "take any remedial action." (*Id.*)

On February 9, 2019, the plaintiff contacted the United States Equal Employment Opportunity Commission ("EEOC") to "address ongoing discrimination and mistreatment she experienced" at Lockheed. (*Id.* ¶ 18.) On February 11, 2019, she emailed Franceschina, Mongan, Gillis, Duane Baldwin,[7] and Karen Sims[8] that she had contacted the EEOC "in an effort to mitigate the current abusive environment in which I currently work." (ECF No. 201 at 1; *see also* ECF No. 189 ¶ 19.) Franceschina forwarded this email to other employees on the email and wrote that he was "'surprised and disheartened by the accusations in this and other emails [he] received directly and indirectly from [the plaintiff] since Friday afternoon." (ECF No. 201 at 2; *see also* ECF No. 189 ¶¶ 20–21.) The plaintiff alleges that Franceschina was "attempt[ing] to feign ignorance and innocence regarding her references to hostile conditions," but knew that the plaintiff complained about the December 2018 welfare check. (ECF No. 189 ¶ 23.)[9]

---

[7] Baldwin was a vice president at Lockheed and TRC. (*Id.* ¶ 13.)

[8] The plaintiff named Karen Sims as a defendant in the first amended complaint (ECF No. 156), but no longer pursues claims against her.

[9] The plaintiff also alleges, without providing any detail, that "the Defendants had the nerve to target her for adverse EEO investigation, heightened scrutiny, reduction in her overtime, threatened reduction in her forty hour work week, leveled, bad faith, retaliatory reverse White race discrimination charge against her, slow walked response to her request for time off after becoming aware of protected activity on February 10, 2019." (*Id.* ¶ 29.)

In December 2018,[10] the plaintiff applied to be promoted to the "REAP Program Coordinator" position, requirements for which included the following: "Effective Representation at Customer-Facing Events: Successfully representing her employers at numerous customer-facing events, engaging diverse audiences, and communicating key messages. Engagement at Project Fairs: Showcasing organizational projects, engaging attendees, and building relationships with community members. Strong Interpersonal Skills: Possessing an engaging personality and strong communication skills to connect with people from various backgrounds and develop meaningful relationships." (*Id.* ¶ 62.). The plaintiff asserts that she was "highly qualified" for the job, and "possessed the necessary [p]roject management skills [and] presentation skills, and had sufficient marketing skills and energy efficiency knowledge." (*Id.* ¶¶ 61–62.) She further points out that the defendants knew she was qualified, "since she was interviewed for the role." (*Id.* ¶ 61.) The plaintiff asserts that Lockheed, Franceschina, Mongan, Montijo, Brian Loughlin,[11] and Linda Eddy[12] had "direct personal participation as key decision makers" in the hiring process. (*Id.* ¶ 26.) She does not describe the interview process, but says that "key decision-makers, including May Gillis" did not have access to her interview notes until the defendants offered the position to Hamid Muneeb, an Asian-American man, on February 20, 2019. (*Id.* ¶ 61.) The plaintiff asserts that "the interviews were a formality" and "her denial of promotion was planned retaliation because of her protected activity" — specifically, her February 10, 2019 email informing the defendants about her communications with the EEOC. (*Id.* ¶¶ 27, 61.)

---

[10] The plaintiff does not specify when she applied for the REAP Coordinator position in her second amended complaint, but previously stated that she did so on December 20, 2018. (ECF No. 185 at 5.)

[11] Loughlin was a residential program manager at Lockheed and an associate at TRC. (*Id.* ¶ 7.)

[12] Eddy was "subordinate to Loughlin" at Lockheed and TRC and "played a direct role in the interview process and subsequent denial of [the plaintiff's] promotion." (*Id.* ¶ 10.)

In a March 9, 2022 letter to the EEOC, the plaintiff asserted that she had "been the subject of ongoing discrimination, retaliation, and harassment," by TRC, Franceschina, and Mongan.  (ECF No. 189 ¶ 64; ECF No. 189-7 (Ex. 7).)  The plaintiff alleged that on May 14, 2021, Mongan "denied [the plaintiff's] request to work remotely from North Carolina" despite "allow[ing] the transfer of a white colleague to Texas" and "deliberately [taking her] white colleague out of rotation for mandatory in-office coverage in New York."  (ECF No. 189-7 at 4.) She also wrote that TRC "failed to sufficiently investigate and respond to [her] claims of race discrimination and retaliation" against Mongan and Franceschina, and that "because of her participation in the EEO process," Mongan and TRC's human resources department "subjected her to ridicule, harassment, and intimidation" while ignoring her complaints."  (*Id.* at 6–7.) Finally, she alleged that Franceschina removed her "expense processing job responsibility" after she filed a lawsuit against him.  (*Id.* at 7.)[13]

On April 30, 2022, the plaintiff attended a "mandatory" "joint TRC and PSEG Long Island off-site promotional event" at which there was "unlawful Confederate flag imagery."  (*Id.* ¶¶ 40–41.)  On May 2, 2022, the plaintiff "lodged complaints" about the event and "raised concerns" about the Confederate flag imagery with her supervisors, including Franceschina and Mongan (*id.* ¶ 40), but her "protected activity was met with retaliatory and discriminatory actions" (*id.* ¶ 41).  She also asserts that TRC, Franceschina, and Mongan did not "take action to deter future racist imagery" and "continued to sponsor similar events without implementing safeguards against racist imagery."  (*Id.* ¶¶ 46, 48–49.)  The plaintiff does not describe the events or the imagery, or explain how she learned of the display.

---

[13] The plaintiff alleged, but no longer brings, claims under the ADEA, ADA, or Equal Pay Act.

On May 3, 2022, the plaintiff spoke with human resources director Regina Robertson for almost an hour and a half about her concerns that the company was discriminating against her and punishing her for speaking out about racism in a "Teams Chat" to TRC employees that said: "I oppose race-based pay disparities I support equal pay for equal work."  (ECF No. 156 ¶ 275 (Am. Compl.); ECF No. 189 ¶ 28.)[14]  For example, the plaintiff said that she had not been promoted and was the "lowest paid person" at TRC.  (ECF No. 189-3 at 2, 43.)  She also talked about the December 2018 "welfare check" in which Lockheed, Franceschina, Gillis, Montijo, and Mongan sent the police to her house.  (*Id.* at 7; ECF No. 189 ¶ 29.)  She maintained that the defendants knew about her complaints, "set out every day to discriminate against [her] and retaliate against [her]" and that they "wanted [her] out of this job."  (ECF No. 189-3 at 20.)  She sent the Teams message to express "her opposition to intentional race discrimination, disparate treatment . . . and retaliation because of her continuous engagement in protected activity."  (ECF No. 189 ¶ 11.)

Robertson told the plaintiff that her message to "the entire team" was "inappropriate."  (ECF No. 189-3 at 5 (Ex. 3).)  The plaintiff asked whether "[standing] up in a staff meeting and [saying] the same thing [she] said on the group chat" would be inappropriate.  (*Id.* at 9.)  Robertson replied that "it would be" and that she would "escort [the plaintiff] out of that office" because "a staff meeting when we're talking about work and projects . . . is not the time and place."  (*Id.* at 9–10.)

---

[14] The plaintiff recorded this conversation and submitted a transcript of it.  (ECF No. 189 ¶ 59.)

The plaintiff maintains that Franceschina, Shannen McDonald,[15] Mongan, Robertson and "other key decision-makers at TRC" were aware of her actions on May 2 and 3, 2022. (ECF No. 189 ¶ 42.)

On May 18, 2022, a little more than two weeks after the plaintiff's conversation with Robinson, TRC terminated her employment because of "performance issues." (ECF No. 189-1 (Ex. 1).) The plaintiff alleges that "Franceschina's actions culminated in her wrongful termination" and that "Robertson, Franceschina, and McDonald[, were] motivated by retaliatory animus," because she complained on May 2, 2022 about the racist imagery at the PSEG event, and then complained to Robertson about a wide range of topics on May 3, 2022. (ECF No. 189 ¶ 55.) She claims that Robertson's comments about opposing discrimination in a staff meeting — including "threaten[ing] to escort [the plaintiff] out" — were inappropriate and "intended to dissuade a reasonable employee in her position from engaging in protected activity." (*Id.* ¶ 57.)

## I.    Exhaustion of Administrative Remedies

On December 3, 2019, the plaintiff filed a complaint with the EEOC against Lockheed. (*Id.* ¶ 63; ECF No. 189-4 (Ex. 4).) The plaintiff alleged that Franceschina and Loughlin subjected her to race and age-based discrimination and retaliation. (ECF No. 189 ¶ 64; ECF No. 189-4 at 2–3.) On September 30, 2020, the EEOC stated that it was "unable to conclude that [there were] violations of the statutes" and issued a right to sue letter. (ECF No. 189-6 (Ex. 6).)

As noted above, on March 9, 2022, the plaintiff alleged to the EEOC that she had "been the subject of ongoing discrimination, retaliation, and harassment," by TRC, Franceschina, and Mongan. (ECF No. 189 ¶ 64; ECF No. 189-7 (Ex. 7).) On June 10, 2022, the plaintiff filed a formal EEOC complaint, restating these allegations and asserting that she was terminated

---

[15] McDonald was the plaintiff's "immediate supervisor" at Lockheed and TRC. (*Id.* ¶ 9.)

because of her "opposition to unlawful discrimination in the workplace." (ECF No. 189-9 (Ex. 9).) She also wrote that Franceschina "called the Nassau County police to escort her from the office" following her termination, and that he "pushed repeatedly the office chair with my bag on it in an intimidating manner." (*Id.*) The EEOC sent the plaintiff a right to sue letter on July 6, 2022. (ECF No. 189-8 (Ex. 8).)

The plaintiff filed three separate lawsuits against Lockheed, TRC, and employees at both companies. (ECF No 185 at 2–3.) The Court consolidated the cases in February 2023. (*Id.*)

## II.    Causes of Action

The plaintiff asserts multiple claims against Lockheed, TRC, and ten current or former employees of those companies:

1. Violations of Title VII of the Civil Rights Act of 1964 against Lockheed and TRC for race discrimination and retaliation (*id.* at 21–22 (Counts I and II)), against Baldwin, Flanagan, Franceschina, Mongan, Montijo, Gillis, Eddy, and Loughlin for aiding and abetting discrimination and retaliation at Lockheed (*id.* at 23 (Count VII)), and against Franceschina, McDonald, and Robertson for aiding and abetting discrimination and retaliation at TRC (*id.* (Count VIII)).

2. Violations of 42. U.S.C. § 1981 against Lockheed and TRC for race discrimination and retaliation (*id.* at 21–22 (Counts I and II)), against Baldwin, Flanagan, Franceschina, Mongan, Montijo, Gillis, Eddy, and Loughlin for race discrimination and retaliation at Lockheed (*id.* at 22 (Counts III and IV)), and against Franceschina, McDonald, and Robertson for race discrimination and retaliation at TRC (*id.* (Counts V and VI)).

3. Violations of New York State Human Rights Law ("NYSHRL") against Lockheed and TRC for race discrimination and retaliation (*id.* at 21–22 (Counts I and II)), against Baldwin, Flanagan, Franceschina, Mongan, Montijo, Gillis, Eddy, and Loughlin for race discrimination and retaliation and aiding and abetting race discrimination and retaliation at Lockheed (*id.* at 22–23 (Counts III, IV, and VII)), and against Franceschina, McDonald, and Robertson for race discrimination and retaliation and aiding and abetting race discrimination and retaliation at TRC (*id.* (Counts V, VI, and VIII)).

4. Violations of New York tort law:

   a. Negligent infliction of emotional distress ("NIED") against all defendants, for their "direct and personal involvement and enabling of a pervasively

hostile and discriminatory work environment in the Melville office." (*Id.* at 24 (Count IX).)

b. Intentional infliction of emotional distress ("IIED") against defendants Franceshina, McDonald, and Robertson for "instigating, encouraging, and fostering fear of physical harm," by "needlessly call[ing] the Suffolk County Police Department (SCPD), exacerbating the risk of harm, and threatening Oliver Cyrus by shoving an office chair in her presence during an emotionally stressful situation." (*Id.* at 24 (Count X).)

Gillis moves to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2) and 12(b)(6). (ECF No. 193.) She argues that the Court does not have subject matter jurisdiction over the plaintiff's NYSHRL claims, that plaintiff does not allege facts sufficient to establish personal jurisdiction over her, and that the plaintiff made only "conclusory allegations of race discrimination under Section 1981 at NYSHRL; retaliation under Section 1981 and NYSHRL; aiding and abetting discrimination under NYSHRL; NIED; and IIED." (*Id.* at 12.)

Lockheed, TRC, Duane Baldwin, Eddy, Roger Flanagan,[16] Franceschina, Loughlin, McDonald, Mongan, Montijo, and Robertson move to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 197.) They say that "[n]one of Plaintiff's claims is legally sufficient as a matter of law" because the second amended complaint "is based entirely on self-serving conclusory allegations, lacking any factual support, of workplace grievances she subjectively attributes to her race." (*Id.* at 8–9.)

## LEGAL STANDARD

To survive a Rule 12(b)(6) challenge, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson v.*

---

[16] The plaintiff does not identify Flanagan's position at Lockheed or TRC.

*Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  Although a plaintiff need not set forth "detailed factual allegations," a complaint that includes only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555.  When faced with a Rule 12(b)(6) motion, the Court "accept[s] all factual allegations in the complaint as true and draw[s] all inferences in the plaintiff's favor."  *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013).

The Court "liberally construe[s]" *pro se* filings and evaluates them by "less stringent standards than formal pleadings drafted by lawyers."  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *see also McCray v. Lee*, 963 F.3d 110, 117 (2d Cir. 2020).  The plaintiff's claims are "read to raise the strongest arguments that they suggest."  *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 387 (2d Cir. 2015) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006)).

## DISCUSSION

## I.    Defendants Baldwin and Flanagan

The claims against Baldwin and Flanagan must be dismissed, because the plaintiff does not sufficiently describe what they did.  The second amended complaint makes only passing references to these defendants; the plaintiff says that Baldwin is a Vice President at Lockheed and TRC, who knew about her February 10, 2019 email, and says nothing about Flanagan.  (ECF No. 189 ¶¶ 13, 27.)  She also includes him and Flanagan with the individual defendants against whom certain claims are brought.  (*Id.* at 23.)  This is not sufficient to state a claim.  (ECF No. 189 ¶ 27, at 23.)  *See Jenkins v. Eaton*, No. 08-CV-0713, 2009 WL 3873017, at *6 n.11 (E.D.N.Y. Nov. 18, 2009) (dismissing claims as to a specific defendant where "[t]he Complaint only mentions [that defendant] in a conclusory manner and the allegations are not sufficient to state a claim against her"); *Keita v. U.S. Small Bus. Admin.*, No. 07-CV-4958, 2010 WL 395980,

at *5 (E.D.N.Y. Feb. 3, 2010) (dismissing claims as to a specific defendant because "[w]ithout some specification of factual detail, the complaint completely fails to state any plausible claim against [that defendant] under the *Iqbal* test"); *Lucien v. Williams*, No. 20-CV-8020, 2023 WL 2648215, at *5 (S.D.N.Y. Mar. 27, 2023) (dismissing claims where, "[b]eyond naming Defendants in the caption of his Complaint, Plaintiff has provided only conclusory allegations as to each of them").

## II.    Title VII and Section 1981

The plaintiff's Title VII and Section 1981 claims, which she also raised in the first amended complaint, are based on two discrete incidents: (1) Lockheed's failure to promote her to the REAP Coordinator position; and (2) TRC's decision to fire her.  (ECF No. 189 ¶¶ 24, 27–28.)[17]  The Court analyzes the plaintiff's discrimination and retaliation claims together because they are governed by the *McDonnell Douglas* burden-shifting framework.  *See Vivenzio v. City of Syracuse*, 611 F.3d 98, 106 (2d Cir. 2010).  The *McDonnell Douglas* framework places "the initial burden of establishing a prima facie case of discrimination" on the plaintiff.  *Orrego v.*

---

[17] The plaintiff alleges that there were other adverse employment actions, including the December 2018 NYPD welfare check, Robertson's threat to escort her out after the plaintiff sent a Teams message, and an adverse EEO investigation, among others.  (ECF No. 189 ¶¶ 28–29.)  As the Court explained in its March 12, 2024, order, none of these allegations qualify as adverse employment actions within the meaning of Title VII or Section 1981.  (ECF No. 185 at 14 (collecting cases).)  The only new allegation in the second amended complaint is that TRC and Mongan "invented a rule just for her and required [] her to submit a request for approval to take off to get the [Covid-19] vaccine."  (ECF No. 189 ¶ 39.)  The plaintiff does not say when this happened or provide any additional detail about it.  In any event, "denial of administrative leave" "is not an adverse employment action."  *Smith v. City of New York*, 385 F. Supp. 3d 323, 336 (S.D.N.Y. 2019) (collecting cases).  For the same reason, requiring that an employee request leave is not an adverse employment action.

Additionally, the plaintiff asserts in her March 9, 2022 EEOC letter that Mongan "denied [her] request to work remotely from North Carolina" despite "allow[ing] the transfer of a white colleague to Texas" and "deliberately [taking her] white colleague out of rotation for mandatory in-office coverage in New York."  (ECF No. 189-7 at 4.)  However, "courts in the Second Circuit have generally found that the denial of an employee's request to work remotely does not constitute an adverse employment action under Title VII."  *Jones v. Brookhaven Sci. Assocs., LLC*, No. 23-CV-4194, 2024 WL 4145777, at *7 (E.D.N.Y. Sept. 10, 2024) (collecting cases).

*Knipfing*, 564 F. Supp. 3d 273, 283 (E.D.N.Y. 2021) (quoting *McGill v. Univ. of Rochester*, 600 F. App'x 789, 790 (2d Cir. 2015) (internal quotation omitted)).

The plaintiff brings Title VII claims only against Lockheed and TRC, though she also alleges that the individual defendants aided and abetted them. (ECF No. 189 at 23 (Counts VII and VIII)). While "an individual defendant may be held liable under the aiding and abetting provision of the NYSHRL if he actually participates in the conduct giving rise to a discrimination claim," it is well-established that he "may not be held personally liable under Title VII." *Rojas v. Roman Catholic Diocese of Rochester*, 660 F.3d 98, 106 n.10 (2d Cir. 2011) (citations and quotation marks omitted). By contrast, the plaintiff's Section 1981 claims — which she brings against Lockheed, TRC, and individual defendants Eddy, Franceschina, Gillis, Loughlan, McDonald, Mongan, Montijo, and Robertson (ECF No. 189 at 22 (Counts III, IV, V, and VI) — permit individual liability "if a plaintiff can demonstrate some affirmative link to causally connect the actor with the discriminatory action." *Alvarado v. United Hospice, Inc.*, 631 F. Supp. 3d 89, 122 (S.D.N.Y. 2022) (citation and internal quotation marks omitted). Because the standards that apply to Title VII discrimination and retaliation claims also apply to Section 1981 claims, courts dismiss individual Section 1981 claims when there is no plausible Title VII claim against the employer. *Belton v. Borg & Ide Imaging, P.C.*, 512 F. Supp. 3d 433, 447 (W.D.N.Y. 2021) (dismissing plaintiff's Section 1981 discrimination and retaliation claims "for the same reasons" underlying the dismissal of the plaintiff's Title VII claims); *James v. Countrywide Fin. Corp.*, 849 F. Supp. 2d 296, 320 (E.D.N.Y. 2012) ("[T]o the extent the Court dismissed plaintiff's Title VII retaliation claims, those claims cannot be maintained pursuant to Section 1981."). Accordingly, the Court addresses the Title VII claims solely as to Lockheed and TRC and, where necessary, the Section 1981 claims as to all charged defendants.

### a.    Discrimination

To make a *prima facie* showing of discriminatory failure to promote or hire under the *McDonnell Douglas* framework, a plaintiff must establish that: "(1) she is a member of a protected class; (2) she applied and was qualified for a job for which the employer was seeking applicants; (3) she was rejected for the position; and (4) the position remained open and the employer continued to seek applicants having the plaintiff's qualifications." *Aulicino v. N.Y.C. Dep't of Homeless Servs.*, 580 F.3d 73, 80 (2d Cir. 2009) (quoting *Petrosino v. Bell Atl.*, 385 F.3d 210, 226 (2d Cir. 2004)). With respect to the fourth element, "when the position has been filled . . . the Second Circuit applies the more generic formulation—whether 'the circumstances of the [failure to promote] give rise to an inference of discrimination.'" *Martinez v. Davis Polk & Wardwell LLP*, 208 F. Supp. 3d 480, 486 (E.D.N.Y. 2016) (quoting *Mandell v. Cnty. of Suffolk*, 316 F.3d 368, 377 (2d Cir. 2003)), *aff'd*, 713 F. App'x 53 (2d Cir. 2017). This "requires the plaintiff to 'show she was similarly situated in all material respects to the individuals with whom she seeks to compare herself.'" *Id.* (quoting *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000)). "In the context of a promotion, that means comparing the qualifications of the plaintiff with those of the person promoted." *Id.*

For other adverse employment actions, the plaintiff "must show that (1) she is a member of a protected class; (2) she was qualified for the position she held; (3) she suffered an adverse employment action; and (4) the adverse action took place under circumstances giving rise to the inference of discrimination." *Orrego*, 564 F. Supp. 3d at 283 (cleaned up) (citing *McGill*, 600 F. App'x at 790–91). "Such circumstances may include 'the employer's criticism of the plaintiff's performance in ethnically degrading terms,' 'invidious comments about others in the employee's protected group,' 'the more favorable treatment of employees not in the protected group,' or 'the

sequence of events leading to' the adverse action." *Tieu v. New York City Econ. Dev. Corp.*, 717 F. Supp. 3d 305, 321–22 (S.D.N.Y. 2024) (quoting *Chambers v. TRM Copy Centers Corp.*, 43 F.3d 29, 37 (2d Cir. 1994)).

"To survive a motion to dismiss, a plaintiff claiming employment discrimination is not required to allege a prima facie case under the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *Gupta v. City of Bridgeport*, No. 14-CV-00112, 2015 WL 1275835, at *4 (D. Conn. Mar. 19, 2015) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002)). However, "a plaintiff must plead facts that render [her] claim facially plausible." *Id.* (cleaned up). "The elements of a prima facie discrimination claim are nonetheless relevant to the determination of whether a complaint provides a defendant with fair notice and contains sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (cleaned up). As stated above, "the submissions of a *pro se* litigant must be construed liberally and interpreted to raise the strongest arguments that they *suggest.*" *Triestman*, 470 F.3d at 474 (citation and internal quotation marks omitted).

### i.    *Lockheed's Failure to Promote*

The defendants do not dispute that the plaintiff was a member of a protected class, that she was qualified for the position, and that the failure to promote her to the REAP Coordinator position was an adverse employment action. (*See* ECF No. 193 at 20; ECF No. 197 at 18.) They claim, however, that the plaintiff has not sufficiently alleged discriminatory intent. (ECF No. 193 at 20; ECF No. 197 at 18.)

The plaintiff does not allege that any defendant made "invidious comments" about her race or mentioned her race at all. *Tieu*, 717 F. Supp. 3d at 321–22. Moreover, she "alleges nothing about the experience of the [the employee who was promoted] to suggest that [her race]

14

was the cause for denying [her] a promotion." *See Kouassi v. New York City Dep't of Homeless Servs.*, No. 14-CV-7445, 2017 WL 4342093, at *4 (E.D.N.Y. Sept. 25, 2017). Courts in this circuit have dismissed failure to promote claims where the plaintiff does not allege that she and the employee who was promoted are similarly situated. *See id.*; *Wang v. Palmisano*, 157 F. Supp. 3d 306, 340 (S.D.N.Y. 2016) (dismissing age discrimination claim where the "Plaintiff provide[d] no details about these putative hires, such as their hire dates, ages, qualifications, work experience, or whether Defendants knew their age"); *Stern v. State Univ. of New York*, No. 16-CV-5588, 2018 WL 4863588, at *10 (E.D.N.Y. Sept. 30, 2018) (finding that the plaintiff did not raise an inference of discrimination where "[h]er complaint lack[ed] any information that would allow the court to consider whether she was similarly situated to" the employee that received the promotion); *see also Rivera-Powell v. New York City Bd. of Elections*, 470 F.3d 458, 470 (2d Cir. 2006) ("[A] complaint [that] proffers only a conclusory allegation of discrimination, which, without evidentiary support or allegations of particularized incidents, does not state a valid claim and so cannot withstand a motion to dismiss." (citations and internal quotation marks omitted)).

Because the plaintiff has not alleged a cognizable discrimination claim against Lockheed, none of the individual defendants can be held liable under Section 1981. *Alvarado*, 631 F. Supp. 3d at 123 ("[I]t is axiomatic that [the individual defendants] could not have been personally involved in discriminatory action against Plaintiffs when the Court has already found that Plaintiffs were not subject to any discriminatory action."). Accordingly, the plaintiff's Title VII and Section 1981 discrimination claims with respect to Lockheed's failure to promote are dismissed.

ii.    *TRC's Termination Decision*

The defendants claim that the plaintiff has not adequately pled that TRC fired her "under circumstances giving rise to the inference of discrimination." *Orrego*, 564 F. Supp. 3d at 283. The plaintiff alleges only that the defendants "treated White and Asian American employees in the Melville office more favorable than [they] did [the plaintiff] because of her race." (ECF No. 189 ¶ 24.) The plaintiff does not allege that any defendant referred to her race, criticized her work "in ethnically degrading terms," or made "invidious comments about others in the employee's protected group." *Tieu*, 717 F. Supp. 3d at 321–22. The plaintiff's assertion that other employees were "treated . . . more favorabl[y] than [the plaintiff] because of her race[]" (ECF No. 189 ¶ 24) is conclusory, and standing alone, is not enough to sustain a claim of discriminatory termination. *McDowell v. N. Shore-Long Island Jewish Health Sys., Inc.*, 788 F. Supp. 2d 78, 82 (E.D.N.Y. 2011) (dismissing claims where the "plaintiff's conclusion that other similarly-situated employees were treated more favorably than him is a bare conclusion, unsupported by any specific alleged facts"); *Colon v. City of New York*, No. 19-CV-10435, 2021 WL 4943552, at *12 (S.D.N.Y. Jan. 15, 2021) ("[I]t is insufficient for a plaintiff to make naked assertions of disparate treatment without factual allegations indicating those employees treated differently were similarly situated."); *McMillian v. MTA Metro-N. R.R.*, No. 20-CV-1026, 2021 WL 4311318, at *4–5 (S.D.N.Y. Sept. 20, 2021) (dismissing discrimination claim because plaintiff did not allege "any facts which link her termination to unlawful discrimination" and plaintiff cannot "rely on the fallacy that because she belongs to a protected class, it is plausible that anything negative that happened to her at work was because of her membership in that class"). Accordingly, the Title VII and Section 1981 discrimination claims relating to the plaintiff's termination are dismissed.

b.    **Retaliation**

The Court also analyzes the plaintiff's retaliation claims under the *McDonnell Douglas* burden-shifting framework, which requires her to "demonstrate that (1) she engaged in protected activity; (2) the employer was aware of that activity; (3) the plaintiff suffered a materially adverse action; and (4) there was a causal connection between the protected activity and that adverse action." *Orrego*, 564 F. Supp. 3d at 284 (internal quotation marks omitted). The plaintiff can establish a causal connection either "(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." *Gordon v. N.Y.C. Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000). As explained above, the plaintiff alleges only two adverse employment actions: (1) Lockheed's failure to promote and (2) TRC's decision to terminate her employment.

i.    *Lockheed's Failure to Promote*

Construed liberally, the plaintiff alleges that Lockheed did not promote her to the REAP Coordinator position in retaliation for (1) her complaints about the December 19, 2018 "welfare check" and (2) her February 9, 2019 letter to the EEOC. As the Court explained in dismissing the first amended complaint, the December 2018 welfare check "occurred over three months before Lockheed failed to promote her and is too attenuated to establish a causal relationship between the activity and Lockheed's decision not to promote the plaintiff." (ECF No. 185 at 19.)[18] Nor does the plaintiff's February 9, 2019 letter to the EEOC establish a plausible

---

[18] In the amended complaint, the plaintiff states that she learned that she had been passed over for the promotion on March 14, 2019. (ECF No. 185 at 19.) While the plaintiff now alleges that the date of the adverse employment action is February 20, 2019, it does not alter the analysis. *Cunningham v. Consol. Edison Inc.*, No. 03-CV-3522, 2006 WL 842914, at *19 (E.D.N.Y. Mar. 28, 2006) ("[A] passage of two

retaliation claim because Lockheed was not on notice that she was objecting to discrimination at the company. Rather, the plaintiff stated in her February 11, 2019 email that she had contacted the EEOC "in an effort to mitigate the current abusive environment in which I currently work." (ECF No. 201 at 1.) This email, standing alone, did not put Lockheed "on notice that the complainant believes that discrimination is occurring." *Tubo v. Orange Reg'l Med. Ctr.*, No. 13-CV-1495, 2015 WL 5945853, at *11 (S.D.N.Y. Oct. 13, 2015), *aff'd*, 690 F. App'x 736 (2d Cir. 2017); *Bernard v. J.P. Morgan Chase Bank N.A.*, No. 08-CV-4784, 2010 WL 423102, at *16 (S.D.N.Y. Feb. 5, 2010), *aff'd sub nom.* 408 F. App'x 465 (2d Cir. 2011) ("A vague complaint about unfair treatment does not necessarily put an employer on notice that an employee believes she is being discriminated against because of her race or gender."); *Int'l Healthcare Exch., Inc. v. Glob. Healthcare Exch., LLC*, 470 F. Supp. 2d 345, 357 (S.D.N.Y. 2007) ("[A]mbiguous complaints that do not make the employer aware of alleged discriminatory misconduct do not constitute protected activity.").[19]

### ii.    *TRC's Termination Decision*

The plaintiff alleges that TRC terminated her in retaliation for (1) her May 2, 2022 complaint about the promotional event with PSEG, and (2) her May 3, 2022 conversation with Robertson. With respect to her May 2nd complaint, the plaintiff alleges that she "lodged

---

months between the protected activity and the adverse employment action seems to be the dividing line.").

[19] In her sur-response, the plaintiff asserts that she "made [her] opposition to discrimination known" to Sims on January 29, 2019. (ECF No. 209 at 3.) She attaches a summary of this conversation written by Sims and a February 11, 2019 email from Sims to Lockheed employees containing that summary to both her opposition "exhibit" and her sur-response. (ECF No. 201 at 34–35; ECF No 209 at 16, 19–21.) Because the plaintiff makes no reference to her discussions with Sims in the second amended complaint, the Court does not consider these documents. *Madu, Edozie & Madu, P.C.*, 265 F.R.D. at 123. In any event, Sims' summary of her meeting with the plaintiff does not include any reference to racial discrimination. (*See* ECF No. 209 at 19–21.)

complaints with her supervisors, including . . . Franceschina and Mongan" about "Confederate flag imagery" at the PSEG promotional event on April 30th.  (ECF No. 189 ¶¶ 40–41.)  The plaintiff's complaints that a racially charged symbol was displayed at a company event was enough to put TRC on notice that she was "protest[ing her] employer's failure to take steps to address a racially offensive incident in the workplace."  *Devers v. SNC-Lavalin Generation, Inc.*, No. 12-CV-3747, 2014 WL 4954623, at *8 (E.D.N.Y. Sept. 30, 2014) (finding a complaint about a noose hung in the workplace sufficient to show that the plaintiff "believed that it was a threatening expression of racial animus" and constituted protected activity of which his employer could be aware); *see also Tubo*, 2015 WL 5945853, at *11.  The plaintiff has also established a causal connection between this protected activity and her termination: the defendant fired her only sixteen days after the protected activity.  (*See* ECF No. 189-1.)

Similarly, the plaintiff's many complaints about discrimination during her May 3rd conversation with Robertson put TRC on notice of the plaintiff's claims that she was the victim of discrimination.  The entire theme of that conversation, which followed the plaintiff's Teams message to the company in which she said that she "oppose[d] race-based pay disparities" and "support[ed] equal pay for equal work" (ECF No. 156 ¶ 275), was the plaintiff's belief that she was the victim of "discrimination" and "retaliation" (ECF No. 189-3).  The plaintiff said that she was the "lowest paid person" at TRC and was paid less than her white counterparts.  (*Id.* at 2, 10–11.)  She also said that the defendants knew about these complaints, "set out every day to discriminate against [her] and retaliate against [her]" and that they "wanted [her] out of this job." (*Id.* at 20.)  Robertson was a Human Resources director, so her knowledge of the plaintiff's complaints — clearly protected activity — can fairly be imputed to TRC.  *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 844 (2d Cir. 2013) ("[F]or purposes of a prima facie case, a plaintiff

may rely on 'general corporate knowledge' of her protected activity to establish the knowledge prong of the prima facie case.") (quoting *Gordon v. N.Y.C. Bd. of Educ.*, 232 F.3d 111, 116 (2d Cir. 2000)); *see also Harding v. Dorilton Cap. Advisors LLC*, 635 F. Supp. 3d 286, 303 (S.D.N.Y. 2022) (finding the plaintiff's report to HR about unlawful discrimination sufficient to satisfy the knowledge requirement).  As with the May 2nd incident, the passage of only two weeks between the call with Robertson and the plaintiff's termination is enough to establish an indirect causal connection.  (*See* ECF No. 189-1.)  Accordingly, the plaintiff has made out a *prima facie* case of retaliation against TRC.

To plead viable Section 1981 claims against the Franceschina, McDonald, and Robertson for their role the allegedly retaliatory termination, the plaintiff must claim "some affirmative link to causally connect [the individual defendants] with the discriminatory action."  *Alvarado*, 631 F. Supp. 3d at 122 (citation and internal quotation marks omitted); *see also Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 75 (2d Cir. 2000) ("A claim seeking personal liability under section 1981 must be predicated on the actor's personal involvement." (citation and quotation marks omitted)).  Personal involvement "includes not only direct participation in the alleged violation but also gross negligence in the supervision of subordinates who committed the wrongful acts and failure to take action upon receiving information that constitutional violations are occurring."  *Patterson v. County of Oneida*, 375 F.3d 206, 229 (2d Cir. 2004).

The plaintiff states a plausible Section 1981 retaliation claim against Robertson, who not only spoke with the plaintiff on May 3rd, but also signed the termination letter.  (*See* ECF No. 189-1.)  The plaintiff also asserts a sufficient claim against Franceschina and McDonald, who she says knew about her protected activity and played a direct role in her termination.  (ECF No. 189 ¶¶ 35, 50, 56.)  Specifically, the plaintiff alleges she "lodged complaints" with Franceschina

about the May 2nd event and that Franceschina and McDonald knew about the plaintiff's May 3rd call with Robertson. (*Id.* ¶ 40, 54–55.) She also asserts Franceschina, as "the highest-ranked supervisor at the Melville office," was the "the ultimate decision maker" whose "actions culminated in her wrongful termination." (*Id.* ¶¶ 5, 50.) Similarly, she alleges that McDonald "served as [her] immediate supervisor" and "played a direct role in [her] termination." (*Id.* ¶ 9.) At the motion to dismiss stage, these allegations are sufficient to state a claim against Franceschina and McDonald. *See Karupaiyan v. CVS Health Corp.*, No. 19-CV-8814, 2023 WL 5713714, at *21 (S.D.N.Y. Sept. 5, 2023) (permitting Section 1981 retaliation claims to proceed where individual defendant "was Plaintiff's supervisor" and "was one of two decisionmakers in terminating Plaintiff's contract"). Accordingly, the defendants' motion to dismiss the retaliation claim is denied.

## III.    NYSHRL Claims

Gillis moves to dismiss the plaintiff's NYSHRL claims for lack of subject matter jurisdiction on the grounds that the court was divested of jurisdiction after the plaintiff filed complaints with the New York State Division on Human Rights ("NYSDHR"). (ECF No. 193 at 12–13.) Although the remaining defendants did not raise this defense, "[w]hen a requirement goes to subject-matter jurisdiction, courts are obligated to consider *sua sponte* issues that the parties have disclaimed or have not presented." *Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012). "[T]he district court must take all uncontroverted facts in the complaint . . . as true, and draw all reasonable inferences in favor of the party asserting jurisdiction." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014) (citing *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011)). "[T]he party asserting subject matter

jurisdiction 'has the burden of proving by a preponderance of the evidence that it exists.'" *Id.* (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)).

Under New York Executive Law § 297(9), a plaintiff raising NYSHRL claims can bring "a cause of action in any court of appropriate jurisdiction . . . unless such person had filed a complaint . . . with any local commission on human rights." N.Y. Exec. Law § 297(9). In other words, Section 297(9) "deprives New York courts of jurisdiction to hear claims filed with the NYSDHR and dismissed for any reason other than those listed in the statute." *McGullam v. Cedar Graphics, Inc.*, 609 F.3d 70, 74 n.3 (2d Cir. 2010); *Symotyuk-Knoll v. HealthEquity, Inc.*, No. 1:21-CV-08348, 2023 WL 5576405, at *3 (S.D.N.Y. Aug. 29, 2023) ("Under the NYSHRL, New York State Executive Law § 297(9), a plaintiff is barred from bringing a claim of discrimination that was previously filed with the NYSDHR to court."). Section 297(9) does not prevent a plaintiff from pursuing her NYSHRL claims in court where the NYSDHR has "dismissed such complaint on the grounds of administrative convenience . . . untimeliness . . . [or] that the election of remedies is annulled." N.Y. Exec. Law § 297(9). Additionally, "a discrimination complaint filed with the EEOC that the EEOC then cross-files with DHR 'is not deemed to be an election of administrative remedy'" that precludes a plaintiff from bringing suit in court. *Krause v. Kelehan*, No. 17-CV-1045, 2018 WL 2021484, at *7 (N.D.N.Y. Apr. 26, 2018) (quoting *Melendez v. Int'l Serv. Sys., Inc.*, No. 97-CV-8051, 1999 WL 187071, at *13 (S.D.N.Y. Apr. 6, 1999)).

The plaintiff filed the administrative complaints against Lockheed and TRC with the NYSDHR. (*See* ECF Nos. 189-4, 189-9.) While she has attached her EEOC "right to sue" letters against each employer (ECF Nos. 189-6, 189-8), she has not provided any evidence that the NYSDHR dismissed her complaint "on the grounds of administrative convenience . . .

untimeliness . . . [or] that the election of remedies is annulled," or that the complaint was cross-filed by the EEOC. N.Y. Exec. Law § 297(9). Accordingly, the Court dismisses the plaintiff's NYSHRL claims without prejudice. *Alvarado v. Mount Pleasant Cottage Sch. Dist.*, 404 F. Supp. 3d 763, 789 (S.D.N.Y. 2019) (dismissing NYSHRL claims without prejudice where the plaintiff "provided the Court with her EEOC 'right to sue' letter, but [did] not provide[] any indication that the NYSDHR dismissed her complaint on 'administrative convenience' or 'untimeliness,' or otherwise annulled her election of remedies").

## IV. State Law Claims

### a. Negligent Infliction of Emotional Distress

The plaintiff brings a claim for negligent infliction of emotional distress against "all defendants" for all of the conduct outlined in the complaint. (ECF No. 189 at 23–24 (Count IX).)[20] "To plead a negligent infliction of emotional distress claim under New York law, a plaintiff must allege (1) a breach of a duty owed to the plaintiff; (2) emotional harm; (3) a direct causal connection between the breach and the emotional harm; and (4) circumstances providing some guarantee of genuineness of the harm." *Francis v. Kings Park Manor, Inc.*, 992 F.3d 67, 81 (2d Cir. 2021). A plaintiff cannot sustain a negligent infliction of emotional distress claim when her claim relates to intentional conduct. *Lally, v. Klick USA, Inc.*, No. 23-CV-10293, 2025

---

[20] The plaintiff alleges that the defendants: "[Caused] Negligent Infliction of Emotional Distress in aiding and abetting race discrimination, adverse adverse denial of promotion on February 20, 2019, adverse wrongful termination on May 18, 2022 and, retaliation because of Plaintiff's engagement in protected activity on May 02, 2022, and May 03, 2022 and continuously before, and thereafter specifically and because of Plaintiff's opposition to intentional race discrimination, opposition to being subjected to racist, unlawful, oppressive confederate flag imagery, hostile, unwarranted NYPD involved welfare check, being told by Franceschina, 'that's what you get,' after expression of fear of physical harm and risk of death to herself and family members, in connection with her employment at Lockheed Martin and TRC against all Defendants because of the Defendants direct and personal involvement and enabling of a pervasively hostile and discriminatory work environment in the Melville office over a period of forty-eight months." (*Id.* at 23–24.)

WL 786576, at *7 (S.D.N.Y. Mar. 11, 2025) (dismissing negligent infliction of emotional

distress claim where the plaintiff "only alleges intentional conduct"); *Chai v. New York Univ.*,

No. 23-CV-9192, 2024 WL 4042468, at *12 (S.D.N.Y. Sept. 4, 2024) ("Plaintiff cannot resurrect

a moribund intentional infliction of emotional distress claim by labeling it as negligence.

Accordingly, Plaintiff's claim . . . for negligent infliction of emotional distress is dismissed.");

*Gavel v. WOW Payments LLC*, No. 20-CV-3475, 2020 WL 7890660, at *1 (S.D.N.Y. Oct. 15,

2020); ("The defendant's conduct is alleged to be intentional and deliberate and allegedly in its

nature offensive and is therefore outside the ambit of actionable negligence." (cleaned up));

*Corley v. Vance*, 365 F. Supp. 3d 407, 454 (S.D.N.Y. 2019), *aff'd sub nom. Corley v. Wittner*,

811 F. App'x 62 (2d Cir. 2020) ("The conduct that Plaintiff ascribes to each of the . . .

Defendants is intentional . . . [meaning] claim for negligent infliction of emotional distress must

be dismissed.").

The plaintiff alleges in the second amended complaint that the defendants' conduct was

intentional; she uses the word "negligent" only when she states that she is asserting a negligent

infliction of emotional distress claim.  (*See* ECF No. 189 ¶ 14, at 23.)  Accordingly, she fails to

state a claim for negligent infliction of emotional distress.[21]

### b.    Intentional Infliction of Emotional Distress

The plaintiff brings a state law intentional infliction of emotional distress claim against

Franceschina, McDonald, and Robertson for "personally instigating, encouraging, and fostering

fear of physical harm in" the plaintiff.  (ECF No. 189 at 24 (Count X).)  The plaintiff asserts that

the defendants "aid[ed] and abet[ed] race discrimination, adverse denial of promotion on

---

[21] Because the Court finds that the plaintiff fails to state any claims against Gillis, it does not address her
personal jurisdiction arguments.  (ECF No. 193 at 13–17.)

February 20, 2019, wrongful termination on May 18, 2022, and retaliation for engagement in protected activity on May 02, 2022, and May 03, 2022." (*Id.*) She also alleges that Franceschina "needlessly called the Suffolk County Police Department" to escort her out of the office after she was terminated, and "threaten[ed] Oliver Cyrus by shoving an office chair in her presence during [that] emotionally stressful situation." (*Id.*; ECF No. 189-9 at 3.))

There are four elements to an intentional infliction of emotional distress claim in New York: "(i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional distress." *Howell v. New York Post Co.*, 81 N.Y.2d 115, 121 (1993); *see also Conboy v. AT&T Corp.*, 241 F.3d 242, 258 (2d Cir. 2001). The tort provides "a remedy for the damages that arise out of a defendant engaging in 'extreme and outrageous conduct, which so transcends the bounds of decency as to be regarded as atrocious and intolerable in a civilized society.'" *Turley v. ISG Lackawanna, Inc.*, 774 F.3d 140, 157 (2d Cir. 2014) (quoting *Freihofer v. Hearst Corp.*, 65 N.Y.2d 135, 143 (1985)). "New York sets a high threshold for conduct that is considered 'extreme and outrageous,'" making intentional infliction of emotional distress "an extremely disfavored cause of action." *Hogan v. J.P. Morgan Chase Bank*, No. 05-CV-5342, 2008 WL 4185875, at *4 (E.D.N.Y. Sept. 4, 2008) (citations omitted).

As explained above, the adverse employment actions about which the plaintiff complains are only partially actionable as employment claims, and do not reach the high threshold for an intentional infliction of emotional distress claim. *Sharabura v. Taylor*, No. 03-CV-1866, 2003 WL 22170601, at *4 (E.D.N.Y. Sept. 16, 2003) ("[The plaintiff] asserts that her employer criticized her unfairly, gave her undesirable assignments and ultimately terminated her. As a

matter of law, those alleged actions do not meet New York's high threshold for . . . intentional infliction of emotional distress."); *see also Turley*, 774 F.3d at 159 ("[S]ome New York courts have determined that plaintiffs may not bring claims for IIED when the conduct and injuries alleged give rise to a statutory claim for workplace discrimination.").  Similarly, the conduct that is the subject of her claim — that Franceschina had the police escort her out of the office following her termination and shoved an office chair in her presence — does not "so transcen[d] the bounds of decency as to be regarded as atrocious and intolerable in a civilized society."  *Id.* at 157 (quoting *Freihofer*, 65 N.Y.2d at 143).  The plaintiff's intentional infliction of emotional distress claim is therefore dismissed.

## V.    Further Leave to Amend

"Although district courts generally grant *pro se* plaintiffs leave to amend a complaint, that leave may be denied when a plaintiff has already been given an opportunity to amend." *Zaerpour v. Bank of Am. Corp.*, No. 23-845, 2024 WL 2069555, at *2 (2d Cir. May 9, 2024) (citing *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988)).  The plaintiff has already been amended her complaint multiple times, "not to mention the various other opportunities to replead that [she] received by virtue of [her] prior lawsuits."  *Id.*

Further leave to amend is not warranted when the "problem with [the plaintiff's] causes of action is substantive" and "better pleading will not cure it."  *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).  As explained in this decision and the Court's March 12, 2024 order, the problems with the plaintiff's Title VII and Section 1981 discrimination claims, her retaliation claims for failure to promote, and her state tort claims are substantive, meaning "[r]epleading would . . . be futile."  *Id.*; *see also Cobham v. New York Racing Ass'n, Inc.*, No. 22-CV-456, 2024 WL 4198453, at *10 (E.D.N.Y. Sept. 16, 2024) ("[A]mendment by a *pro se* party may be

denied as futile where, as here, the pleading's deficiencies cannot be cured."). Accordingly, the Court denies the plaintiff further leave to replead those claims.

With respect to the NYSHRL claims, the plaintiff is granted one more opportunity to establish that the Court has subject matter jurisdiction over those claims. She can do this by submitting documentation that the NYSDHR dismissed her claims "on the grounds of administrative convenience . . . untimeliness . . . [or] that the election of remedies is annulled," consistent with N.Y. Exec. Law § 297(9). If the plaintiff chooses to file an amended complaint addressing the Court's jurisdiction over her NYSHRL claims, she must do so within thirty days.

## CONCLUSION

For these reasons, the defendants' motions to dismiss are denied with respect to the plaintiff's (1) Title VII and Section 1981 retaliation claims against TRC for its decision to terminate her employment, and (2) her Section 1981 retaliation claims against Franceschina, McDonald, and Robertson for the same. The plaintiff's NYSHRL claims are dismissed without prejudice, while the remainder of the plaintiff's claims are dismissed without leave to further amend. If the plaintiff decides to replead her NYSHRL claims, she must do so within thirty days.

The Clerk of Court is respectfully directed to mail a copy of this Memorandum Decision and Order to the plaintiff and to note the mailing on the docket.

**SO ORDERED.**

s/Ann M. Donnelly

_____
ANN M. DONNELLY
United States District Judge

Dated: Brooklyn, New York
       March 28, 2025